IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LESLIE SMITH,
       Plaintiff,

vs.                                 Case No. 3:08cv3/MCR/EMT

PSYCHIATRIC SOLUTIONS, INC., et al.,
       Defendants.
_____/

## ORDER

This cause is before the court upon referral by the clerk.  On June 3, 2008, the undersigned issued an order (Doc. 56) denying "Plaintiff's Motion for Case Management Hearing" (Doc. 46), denying "Plaintiff's Motion to Compel Depositions on June 5 & 6 (Expedited Action Requested)" (Doc. 51), and granting Defendants' motion for a protective order (Docs. 52, 54).[1]  In the same order, the court found that Defendants were <u>likely</u> entitled to the reasonable expenses and fees incurred in responding to Plaintiff's motions, and Defendants were therefore directed to submit documentation of such fees or expenses, after which Plaintiff would be given an opportunity to respond regarding the issue of sanctions (*see* Doc. 56 at 1–2).  Now before the court is "Defendants' Proof of Reasonable Expenses Incurred in Opposing Plaintiff's Motion for Case Management Hearing and Motion to Compel Depositions," in which Defendants seek a total award of attorneys' fees in the amount of $3,795.30 (Doc. 61).  Also before the court is Plaintiff's "Counsel's Statement

---

[1]Defendants filed one response to Plaintiff's Motion to Compel Depositions on June 5 and 6, which was titled "Defendants' Response in Opposition to Plaintiff's Motion to Compel and Defendants' Motion for Protective Order." The response outlined Defendants' objections to Plaintiff's motion, and as relief, sought a protective order quashing the deposition notices at issue (i.e., notices purporting to set depositions on June 5 and 6).  The clerk, therefore, docketed Defendants' response twice, once a response and once as a motion, to ensure proper tracking.  Specifically, the docket reflects that Document 52 is a "Response in Opposition to Plaintiff's Motion to Compel Depositions," and Document 54 is "Defendants' First Motion for a Protective Order," although it is the same document.

Case No. 3:08cv3/MCR/EMT

and Memorandum in Opposition to Sanctions," in which Plaintiff objects both to an award of sanctions and to the reasonableness of the amount claimed by Defendants (*see* Doc. 64).

Thus, the issues before the court are: 1) whether Defendants, as the prevailing party in each of the aforementioned matters, are entitled to an award of sanctions, and if so, 2) whether the amounts claimed by Defendants are reasonable.  Although the issues before the court are relatively narrow, a summary of the discovery disputes that have arisen thus far in this case (including those at issue here), is necessary and relevant to this court's consideration of whether sanctions are appropriate.

I.      BACKGROUND

On May 15, 2008, Plaintiff filed a motion to compel discovery responses from Defendants (Doc. 45).  The next day, Plaintiff filed a motion for case management hearing requesting that the court conduct a hearing to "assist [the parties] in scheduling depositions" (Doc. 46).  On May 19, 2008, the court issued an order requiring Defendants to respond to both of Plaintiff's motions (Doc. 47).  Also on May 19, the court issued an "Order Concerning Discovery Disputes" (OCDD), in which the court ordered that the parties personally confer in "a good-faith effort" to resolve the matters raised in Plaintiff's motions (Doc. 48).  The OCDD <u>strongly urged</u> the parties to reach a resolution without further intervention of the court, especially with regard to the matter of scheduling depositions (*see id.*).  Indeed, the court specifically advised the parties that "[d]eposition scheduling is not the type of matter deserving of the court's limited time" (*id.* at 1 n.1).  The parties were further warned that "If the court is required to resolve any part of the discovery matter, the prevailing party, who will be determined by the court, will be awarded costs and expenses . . . .  The costs will be paid by the non-prevailing attorney and not charged to the client unless counsel provides written proof that the client insisted on proceeding in the discovery matter against counsel's advice."  (*id.* at 2).

On May 22, 2008, Defendants filed responses to each of Plaintiff's motions, indicating that the parties had conferred, but were unsuccessful in resolving all of the issues raised by Plaintiff (*see* Docs. 49, 50).  The undersigned therefore resolved the remaining discovery issues, and in doing so, denied Plaintiff's  motion to compel (*see* Doc. 58).  In the order denying Plaintiff's motion, the undersigned stated:

Here, Plaintiff's motion to compel will be denied.  Thus, pursuant to Rule 37(a)(5)(B), expenses should be awarded to Defendants unless one of the exceptions contained in the Rule apply.  In the instant case, however, the pleadings establish that Defendants provided some discovery responses after Plaintiff's motion to compel had been filed.  Nevertheless, with the exception of a privilege log that should have been provided with Defendants' original responses, the supplemental responses appear to have been provided by Defendants only in an effort to reach a compromise with Plaintiff, not because Defendants determined that their original responses were inadequate.  In short . . . <u>Plaintiff appears primarily responsible for the needless involvement of this court</u>.  However, this court cannot say beyond doubt that all of Defendants' supplemental responses should not have been provided originally.  Thus, <u>although it is a close call</u>, the court determines that "other circumstances make an award of expenses unjust," and therefore, declines to impose sanctions.

(Doc. 58 at 7) (emphasis added).

Second, as to the issues raised in Plaintiff's motion for a case management hearing, Defendants stated that counsel for both parties conferred but were unsuccessful in their attempts to schedule depositions (Doc. 50).  In pertinent part, Defendants expressed dismay with that portion of Plaintiff's motion that asked the court to order that depositions take place in early June 2008 (*see* Doc. 46 at 4–5; Doc. 50 at 3), noting that Defendants had repeatedly advised Plaintiff that they were not available for depositions for four consecutive days in early June (Doc. 50 at 3).  Additionally, Defendants stated:

After receiving the Court's Orders (Docket Entry Nos. 47 and 48), undersigned counsel immediately contacted Plaintiff's counsel to schedule a teleconference to discuss in good faith ways to resolve Plaintiff's Motion.  During that telephonic meeting on May 20, 2008, Defendants explained again the reasons for the rescheduling [of depositions that were originally scheduled in early June] (i.e., Ms. Channabassappa's father's open heart surgery and the trial in El Paso), described Defendants' counsels' unavailability for any four day block of time between then and the proposed [deposition] dates of June 17–20, 2008, apologized if the rescheduling caused any inconvenience, confirmed that the rescheduling was not for any improper or strategic purpose, obtained agreement that Plaintiff and her lawyers were available on the proposed dates of June 17–20, 2008, and inquired why those proposed dates were unacceptable. In response, Plaintiff's counsel demanded a copy of undersigned counsels' trial notice and the identity of the parties involved (indicating that it is customary practice amongst Florida lawyers to provide such proof) and said that they believe, for whatever reason, that Defendants will cancel the proposed schedule of depositions "at the last minute." Undersigned counsel declined to provide Plaintiff's counsel with the name of the client involved in the trial because they did not have

> permission from that client to do so and further informed Plaintiff's counsel that undersigned counsel had no intention of canceling the depositions at all, much less at the "last minute." Apparently that was not enough because Plaintiff persists in the instant Motion, thus necessitating this response by Defendants.

(Doc. 50 at 4). Thus, although everyone was available for depositions on June 17–20, 2008, Plaintiff persisted in requiring the court to resolve the scheduling matter because Plaintiff preferred "early June," even though at that juncture Defendants were not available in early June, the proposed dates for which everyone was available were just one to two weeks beyond the dates preferred by Plaintiff, and the discovery deadline was not until August 1, 2008 (*see* Doc. 40).

On Saturday, May 31, 2008, before the court ruled on the deposition scheduling matter, and despite this court's earlier advisement that "deposition scheduling is not the type of matter deserving of the court's limited time," Plaintiff filed yet another motion, this time titled "Motion to Compel Depositions on June 5 & 6 (Expedited Action Requested)" (*see* Docs. 51, 52). In the motion, Plaintiff requested that the court compel the taking of depositions on June 5–6, 2008, which Plaintiff had unilaterally noticed on Saturday, May 31 via facsimile and e-mail (*id.*). Although Defendants had become available for depositions on those dates, and on May 30, 2008 discussed with Plaintiff the possibility of setting depositions on June 5–6, Defendants did not agree to those dates and advised Plaintiff that they preferred to take the depositions on June 17–20 (*id.*).[2] Without further attempts to resolve the matter, Plaintiff unilaterally noticed the depositions for June 5 and 6, 2008, and chose once again to involve the court in a scheduling matter by filing a motion to compel depositions the dates preferred by Plaintiff (*id.*).

On Sunday, June 1, 2008, Defendants filed a "Response in Opposition to Plaintiff's Motion to Compel and Defendants' Motion for Protective Order" (Docs. 52, 54). Defendants observed: "This Court has advised the parties previously that it is not the job of the Court to micromanage discovery, particularly the scheduling of depositions. [] Yet, without consulting Defendants before doing so, Plaintiff has now filed her third discovery motion asking the Court to do just that . . . ." (Docs. 52, 54 at 1). Defendants also noted that Plaintiff's purported deposition notice was, among

---

[2]Defendants had assured this court and Plaintiff that Plaintiff would be notified if and when the earlier June dates became available (*see* Doc. 50 at 5). Consistent with this representation, Defendants notified Plaintiff on Friday, May 30, 2008, that the earlier dates had cleared.

other things:

> Forcing Defendant to identify and produce a 30(b)(6) deponent on three days' notice on thirteen separate and general topics — though Plaintiff adds the caveat in her notice that "the enumeration of specific topics and categories of information of document herein shall not be taken as a limitation on the scope of the Rule 30(b)(6) deposition(s)." Plaintiff has never before identified any such topics.

(Docs. 52, 54 at 1). Moreover, Defendant pointed out that if the court were to grant the relief requested in Plaintiff's emergency motion, the only result would be that "depositions can happen eight or nine business days before the lawyers have agreed that everyone is available (June 17–20, 2008), the latter dates of which are more than six weeks before the close of discovery" (*id.* at 2). Nevertheless, in their response, Defendants again offered possible resolutions for the matter (*see id.*).

On June 3, 2008, Plaintiff submitted a "Notice of Resolution of Scheduling First Round of Depositions," in which Plaintiff notified the court that the parties had reached an agreement regarding the date, time, and location of the depositions at issue, and stated, "This moots Plaintiff's Motion to Compel Depositions (Doc. 51), and at least temporarily moots Doc. 46, Motion for Case Management" (Doc. 58 at 1). Following the filing of Plaintiff's "Notice of Resolution," the court issued an order stating, in pertinent part:

> Plaintiff is advised that, prior to learning the matter had been resolved, the court spent an inordinate amount of time drafting an order on the matters raised in the instant motions (and Defendants' responses thereto) [i.e., Docs. 46, 50, 51, 52, 54 — all of which relate to the matter of deposition scheduling]. Plaintiff should also know that the draft order was quite scathing, reminding Plaintiff that the court warned that this was not the type of matter deserving of the court's limited time. The draft order further explained to Plaintiff that she has wasted this court's time, her position(s) are unreasonable, the Local Rules of this court were violated by Plaintiff's failure to confer in good faith with counsel for Defendants (*see* N.D. Fla. Loc. R. 7.1(B)), Plaintiff's tactics will not be tolerated, and Defendants are entitled to the costs and expenses incurred in responding to Plaintiff's motions. While Plaintiff may think the matter is over, the court does not. In other words, the parties' resolution of this matter is "a day late and a dollar short." Although the court will not disturb the agreed-upon deposition dates and times, as contained in Plaintiff's Notice of Resolution (Doc. 55), the court believes that sanctions are appropriate. . . . [Therefore], Defendants shall submit documentation of fees or expenses incurred in responding to Plaintiff's Motion for Case Management Conference (Doc. 46) and Motion to Compel Depositions (Doc. 51). Within **TEN (10) DAYS** of receipt of

Defendants' documentation, but no later than **JUNE 23, 2008**, Plaintiff may, but is not required to, file a notice opposing sanctions, outlining any objection to the imposition of sanctions or to the reasonableness of the amounts claimed by Defendants, or both.  Any sanctions imposed will be paid by Plaintiff's counsel and not charged to the client unless counsel provides written proof that the client insisted on going forward against counsel's advice.

(Doc. 56 at 1–2).  This order (Doc. 56) is the subject of the issues now before the court.

II.    RELEVANT LAW

Three relevant Federal Rules of Civil Procedure govern the instant matter.  First, Federal Rule of Civil Procedure 26(c)(1), regarding protective orders, provides in relevant part:

A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . .  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:  (A) forbidding the disclosure or discovery.

Fed. R. Civ. P. 26(c)(1)(A).  Rule 26 further provides that "Rule 37(a)(5) applies to the award of expenses."  Fed. R. Civ. P. 26(c)(3).  *See also* Thomas v. Tenneco Packaging Co., 293 F.3d 1306, 1325 and n.29 (11th Cir. 2002) (If a party objects to opposing counsel's manner of conducting discovery, including depositions, the proper remedy is to seek a protective order — if protective order issues, attorney's fees may be awarded to prevailing party).  *Cf.* Wilson v. Olathe Bank, 184 F.R.D. 395, 399 (D. Kan. 1999) ("Overruling a motion for protective order prompts consideration of sanctions under Fed. R. Civ. P. 37").

Second, Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure provides, in relevant part:

If the motion [for protective order] is granted . . . the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
      (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
      (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
      (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A).

Third, Rule 37(a)(5)(B) of the Federal Rules of Civil Procedure provides, in relevant part:

(A)  If the motion [to compel] is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Thus, an award of expenses to the prevailing party (i.e., the Defendants) on both the motion to compel and the motion for protective order is clearly permitted, as long as none of the exceptions enumerated in the above-cited rules apply.  Further, the matters raised in Plaintiff's motion for case management hearing are related to the issues contained in Plaintiff's motion to compel depositions, and therefore, the undersigned concludes that Defendants — having prevailed on that motion as well — are similarly entitled to an award of expenses (unless an exception applies).  This is especially clear here, considering that the undersigned specifically advised the parties that expenses would be awarded to the party that prevailed on the motion for case management hearing (*see* Doc. 48).

III.   DISCUSSION

A.      Whether Sanctions are Appropriate

Plaintiff's counsel filed a "Statement and Memorandum in Opposition to Sanctions" (Doc. 64).  After outlining the events that led to Plaintiff's filing the motions at issue, Plaintiff essentially asserts that it was not unreasonable to file a motion requesting a hearing with the undersigned (*see id.* at 7–8, 18–19).  While requesting a hearing with the court is not per se unreasonable, the point Plaintiff fails to grasp is that it is unreasonable to request a hearing for the court to assist the parties in scheduling depositions — a point made quite clear by the undersigned in the OCDD (Doc. 48 & n.1).  Moreover, sanctions are not being considered merely because Plaintiff <u>asked</u> for a hearing, sanctions are being considered because the court emphasized, after Plaintiff filed the motion, that this was a matter that should be resolved by the parties, and if the parties failed to resolve it, the loser would pay.  Knowing the risks, Plaintiff persisted, and Plaintiff should not be surprised that sanctions are now at issue.  Although Plaintiff's counsel (hereafter Attorney Johnson)[3] has tried to

---

[3]The "Counsel's Statement and Memorandum in Opposition to Sanctions" is authored by attorney Richard E. Johnson, one of Plaintiff's attorneys, and he has indicated that "[a]ll of the acts at issue are those of [Attorney Johnson]," so any sanctions award should be payable by him and not by Plaintiff's associate counsel (*see* Doc. 64 at 1).

justify his persistence (*see* Doc. 64 at 5, ¶¶ 32, 33 (explaining why he felt it necessary to take the depositions in early June as opposed to June 17–20)), his arguments are entirely unpersuasive.

Next, Attorney Johnson has alleged "due process" concerns with regard to sanctions, stating that he "does not know exactly what offenses [he is] charged with — filing a motion for case management hearing and filing a motion to compel depositions on June 5 & 6, as near as [he] can tell . . ." (Doc. 64 at 19).  He also alleges,  essentially, that he has been "found guilty before the trial" (*id.*).  Attorney Johnson's argument is specious.  The court made it clear that  sanctions would be imposed if the parties failed to  resolve matters relating to deposition scheduling  (Doc. 48).  Additionally, the court has not found  attorney Johnson "guilty"; indeed, no sanctions have yet been awarded.   The court's  order  merely  noted  the  undersigned's  belief  that  sanctions  were appropriate, and it directed that "Defendants [] submit documentation of fees or expenses incurred in responding to Plaintiff's Motion for Case Management Conference (Doc. 46) and Motion to Compel Depositions (Doc. 51)" (Doc. 56).  Further, in the same order, Attorney Johnson was provided with an opportunity to be heard, as the Federal Rules of Civil Procedure require, and the matter of sanctions is presently under consideration.  Thus, Attorney Johnson  has not been sanctioned without being heard, and he was sufficiently informed of the reasons sanctions are under consideration.

Having considered Plaintiff's arguments, the court finds Plaintiff's motions were not substantially justified (or, having filed the motion(s), Plaintiff's refusal to resolve the matter(s) therein was not substantially justified) and that no other circumstances make an award of expenses unjust.  Defendants are therefore entitled to fees or expenses incurred in responding to Plaintiff's Motion for Case Management Conference (Doc. 46) and Motion to Compel Depositions (Doc. 51).

B.       Reasonableness of the Amounts Claimed by Defendants

Defendants seek $3,795.30 in attorney's fees for 9.8 hours of work at a rate of $292.50 per hour for attorney Mark W. Peters, and 4.8 hours of work at the rate of $193.50 for attorney Sneha Channabasappa (*see* Doc. 61, Ex. A at 3–4), for time spent on the matters now before the court (*see* Docs. 50, 52, 54).  Plaintiff generally contests Mr. Peters's and Mr. Channabasappa's hourly rates of $292.50 and $193.50 and their documentation of the hours expended on the motions (*see* Doc. 64 at 21–22).

In the Eleventh Circuit, the district court employs the federal lodestar approach to set reasonable fee awards. *See* <u>Loranger v. Stierheim</u>, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam). "Under the lodestar formula, a court must first determine the attorney's reasonable hourly rate . . . . Next, the court takes the reasonable hourly rate and multiplies it by the 'reasonable number of compensable hours.'" <u>Schafler v. Fairway Park Condominium Ass'n</u>, 147 Fed. Appx. 113, 114–15 (11th Cir. 2005) (citing <u>Loranger</u>, 10 F.3d at 781). With respect to the reasonable hourly rate, "[t]he applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates . . . ." <u>Norman v. Hous. Auth.</u>, 836 F.2d 1292, 1299 (11th Cir. 1988) (internal citations omitted). "'A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.'" <u>Duckworth v. Whisenant</u>, 97 F.3d 1393, 1396 (11th Cir. 1996) (quoting <u>Norman</u>, 836 F.2d at 1299).[4]  In calculating what hours were reasonably spent on the litigation, exclusions for unnecessary or excessive time expended is left to the discretion of the court. <u>EEOC. v. Enterprise Leasing Co.</u>, No. 8:00CV2012T24EAD, 2003 WL 21659097, at *3 (M.D. Fla. May 16, 2003) (citing <u>Norman</u>, 836 F.2d at 1301). The court should exclude excessive, unnecessary, and redundant hours. <u>Duckworth</u>, 97 F.3d at 1397. "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours . . . ," <u>Norman</u>, 836 F.2d at 1303, and objections thereto must be equally specific and precise. <u>Duckworth</u>, 97 F.3d at 1397; <u>Norman</u>, 836 F.2d at 1301.

Here, Defendants have submitted documentation establishing the dates, description, hourly rates, and time expended on work relating to the discovery disputes at issue (Doc. 61, Ex. A at 6–7), to which Plaintiff objects. Attorney Johnson's specific objections are as follows: (1) he should not be sanctioned for Defendants' e-mails during the weekend of May 30–31, when the parties were

---

[4]The court may also consider the twelve factors discussed in <u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714, 717–19 (5th Cir. 1974). *See* <u>Bonner v. City of Prichard</u>, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting in the Eleventh Circuit all former Fifth Circuit decisions rendered before October 1, 1981 as binding precedent). These factors include: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the degree of skill necessary to serve the client properly, (4) the attorney's inability to accept other employment because he accepted the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount of damages involved and the relief or results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the attorney's professional relationship with the client, and (12) awards in similar cases. <u>Johnson</u>, 488 F.2d at 717–19.

looking for alternative ways to hold depositions earlier than June 17–20, because Defendants were required to comply with the court's OCDD by attempting to resolve the matter (*see* Doc. 64 at 21); (2) the timekeepers are not separated in the record, and therefore, it is difficult to determine which attorney completed the work (*id.*); some entries "make no sense" (*e.g.*, defense counsel has logged sixty-six minutes to review and edit a motion filed by Plaintiff) (*id*. at 22); the "6/3/08 entry of 24 minutes for reading the sanctions order and reporting it to others" seems to fall outside the scope of compensable time (*id.*); and Attorney Ginger Barry opines on the hourly rates in the relevant market without giving any actual examples (*id.*).

Plaintiff is correct in noting that Defendants' documentation does not clearly identify who performed the work; thus, the court finds that in fairness any fees awarded should be awarded at the lower hourly rate (i.e., Attorney Channabasapa's rate ($193.50) instead of Attorney Peters's rate ($292.50)).  This  is in  line with other  hourly rates that have been awarded in this  District. *See, e.g.*, Beaulieu v. Bd. of Trustees of Univ. of West Florida, Case No. 3:07cv30 (N.D. Fla. 2007) (awarding fees at the rate of $250.00/hour) (citing Wilson v. Dept. of Children and Families, No. 3:02-cv-357-J-32TEM, 2007 WL 1100469, at *3–*4 (M.D. Fla. Apr. 7, 2007) (awarding $250.00/hour)).  In addition, the court notes that in 1999 a Middle District of Florida bankruptcy court found that a fee of $200.00 per hour constituted a reasonable hourly rate when imposing sanctions pursuant to § 57.105(1), Fla. Stat. (1999).  *See* In re Wille, 333 B.R. 891, 893 (Bankr. M.D. Fla. 2005).  Therefore, the court finds that $193.50 per hour for work performed in 2008 is clearly a reasonable hourly rate for an attorney in the North Florida market.[5]

The court will, however, exclude from the award time claimed by Defendants for work performed prior to Plaintiff's filing of the motion for case management hearing (i.e., Plaintiff's motion was filed on May 16, 2008, but the first three entries on Defendants' documentation are dated May 15, 2008) (*see* Doc. 61, Ex. A at 6).  The court will also exclude time spent by Defendants in trying to resolve the matters raised in Plaintiff's motions; in other words, Defendants will be awarded sanctions only for time spent reviewing and drafting responses to Plaintiff's

---

[5]The court has also considered the affidavit of Ginger L. Barry, Esq., attached to Defendants' documentation, in which she attests that the rates claimed by Defendants are "reasonable and customary" (*see* Doc. 61, Ex. B).

motions, as reflected in: 1) the entry dated May 16, 2008 (review of Plaintiff's motion for case management conference (CMC) — .30 hours), 2) the entry dated May 21, 2008 ("review of and edit Motion for [CMC]" — 1.1 hours)[6], 3) the second entry dated May 21, 2008 (drafting response to Plaintiff's motion for CMC — 2.00 hours), 4) the entry dated May 22, 2008 (reviewing and finalizing response to Plaintiff's motion for CMC — 1.30 hours), 5) the entry dated May 31, 2008 (preparing a response to Plaintiff's motion to compel — 2.30 hours, 6) the second entry dated May 31, 2008 (review of Plaintiff's motion to compel — .30 hours), and 7) the entry dated June 1, 2008 (review of response to Plaintiff's motion to compel — .30 hours) (*see* Doc. 61, Ex. A at 6– 7). Thus, the total award shall be $1,470.60 (193.50 x 7.6 hours), and as previously indicated, the costs will be paid by Plaintiff's attorney (i.e., Attorney Johnson in this case) and not charged to Plaintiff unless counsel provides written proof that Plaintiff insisted on proceeding in the discovery matters at issue against counsel's advice.

Accordingly, it is **ORDERED**:

Within **TWENTY (20) DAYS** of the date of docketing of this order, Richard E. Johnson shall pay to Waller, Lansen, Dortch, & Davis, LLP, the law firm at which both Attorney Peters and Channabasappa are employed, the sum of **$1,470.60**.

**DONE AND ORDERED** this 12th day of September 2008.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[6]Although the entry states just as the undersigned has quoted, it is obvious that Defendants were referring to reviewing Plaintiff's motion and preparing a response thereto, as the response was filed the following day, and as Plaintiff asserts, it would not "make sense" for Defendants to be editing Plaintiff's motion)