**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**LESLIE SMITH,**

      **Plaintiff,**

v.                                              **Case No. 3:08cv3/MCR/EMT**

**PSYCHIATRIC SOLUTIONS, INC.,
PREMIER BEHAVIORAL SOLUTIONS, INC.,
and GULF COAST TREATMENT CENTER, INC.,**

      **Defendants.**
_____/

## ORDER

      This is an action for retaliatory discharge under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, and the Florida Whistle-Blower Act, Fla. Stat. §§ 448.101, *et. seq.*  Plaintiff Leslie Smith worked as a therapist for less than four months at a privately-run treatment center for juvenile delinquents owned and operated by defendants.  She claims that during the time of her employment she uncovered serious physical and sexual abuse of youths at the facility, Medicaid fraud, and a suspiciously altered medication form.  She further claims that immediately after complaining about the altered medication form to the center's management, she was escorted from the premises and terminated.  Smith believes she was terminated for blowing the whistle on defendants' illegal practices.  Defendants maintain Smith was terminated for her unprofessional conduct, violation of the therapist/patient boundary, and her refusal to follow internal policies.

      Gulf Coast Treatment Center operates a corrections program for delinquent youths court-ordered to attend the program.  The program and the physical facility itself are both

generally known as Gulf Coast Youth Academy ("GCYA"). GCYA is operated under contract with the Florida Department of Juvenile Justice ("DJJ"). Both DJJ and the Florida Department of Children and Families ("DCF") have regulatory jurisdiction over GCYA.[1]

On January 10, 2006, Smith was hired by GCTC to work at GCYA as an unlicensed therapist. She claims that shortly thereafter she became aware of the wrongful or illegal conduct noted above for which she contends the defendants were responsible. She maintains she reported some of these incidents to the state and to GCYA's management. These incidents are summarized here.

*Sexual and physical abuse.* Smith claims she learned in February 2006 that a youth was being routinely sexually assaulted by another youth and reported this to GCYA's Program Director and its Licensed Clinical Therapist on February 23, 2006. Smith believes these individuals failed to report the sexual assaults to DJJ as required by DJJ's policy. On March 17, 2006, Smith claims she reported an incident of physical abuse involving another youth and GCYA staff to DCF. According to Smith, this youth indicated he had been beaten by GCYA staff and another youth, and was not permitted to report the incident to DCF. On March 21, 2006, GCYA's Program Director held a staff meeting wherein he

---

[1] The corporate structure of the defendants is significant in this case. Defendant Psychiatric Solutions, Inc. ("PSI"), is a publicly traded company. Its subsidiary, Defendant Premier Behavioral Solutions, Inc. ("PBS"), has a contract with the Florida Department of Juvenile Justice to operate a program called Gulf Coast Youth Academy ("GCYA"), which is located in a Fort Walton Beach facility owned by Defendant Gulf Coast Treatment Center, Inc. ("GCTC"). Gulf Coast Youth Services ("GCYS") is a fictitious name for GCTC. Thus, PSI own PBS, which owns GCTC.

Defendants' memorandum and statement of facts contain a confusing paragraph claiming that PSI owns "Behavioral Solutions, Inc.," which owns "Premier Behavioral Solutions of Florida, Inc. ('PBSI')," which owns GCTC. Thus, according to defendants, there are four corporations in the hierarchy; however, this assertion is not supported by the testimony of Jeff Kaplan, GCTC's CEO, who says PSI owns PBS, which owns GCTC. Other than in these paragraphs, Behavioral Solutions, Inc. and PBSI are never referred to again.

Kaplan also testified that GCYA was "not a corporation" or an "entity in its own right," but rather "a contract with the Department of Juvenile Justice." GCYA is also used as the name of the GCTC facility where the contract is carried out. Regrettably, defendants refer in some places to GCYA as if it actually were a corporation ("PSI was not her employer and GCYA and PBS are not covered by [Sarbanes-Oxley]"; "[a]ll of the purported wrongdoers are employed by GCYA." Defs.' Mem., doc. 75-2, at 14, 13). Given defendants' argument that only one corporation is subject to a Sarbanes-Oxley claim, clearer references to corporate entities would have aided the court's understanding of the facts.

Based on the evidence, the court consistently refers to PSI, PBS, and GCTC as the only three corporate entities, and consistently uses "GCTC" rather than "GCYS" based on Kaplan's testimony that GCYS is a fictitious name for GCTC. GCYA is used only as a reference to the program operated by GCTC.

"strongly encouraged" GCYA staff to give management advance notice before reporting complaints to the state so that GCYA would have time to investigate and resolve complaints before the state officials got involved. Smith believed that by observing this policy she would violate her mandatory duty to report any abuse. For this reason, Smith says she ignored the Program Director's instruction and reported physical abuse to DCF and/or DJJ six times between March 22, 2006 and May 1, 2006. Smith alleges she also made reports of physical abuse to members of GCYA management.

*Medicaid fraud.* Smith claims that on one occasion, GCYA's Licensed Clinical Therapist ordered her to falsely sign a log documenting that Smith had been supervised on a day when she had not. Smith believes this log is submitted to the state's Medicaid program for reimbursement, and therefore GCYA's submission of a false log constitutes fraud. Smith also insists that GCYA was billing Medicaid for services that never occurred and that she repeatedly objected to GCYA's submission of false documentation in this regard. Smith also complains that weekend groups were supervised by direct care staff rather than therapists, which she also believes is against Medicaid's rules, but she concedes she does not know for certain whether this constitutes a violation of the rules.

*Refusal of medication form.* Smith also claims that on or about May 2, 2006, she discovered a youth's "refusal of medication" form which she believed had been altered. Defendants and Smith disagree as to whether youths are disciplined for refusing to take medication. According to defendants, although GCYA staff must document a youth's refusal to take medications to create an accurate medical record for doctors and courts, the youth is not disciplined. Smith alleges that not only are the youth disciplined for refusing medication, but the very existence of the form itself violated youths' civil rights because of its language implying that punishment will be given for refusal.[2]

On May 5, 2006, Smith questioned a nurse about the allegedly altered form. The record reflects this was a confrontation, but there is a factual dispute as to whether it occurred in front of a youth. After the argument, Smith was escorted from the premises

---

[2] The record does not contain a copy of the form.

and told she was suspended. On May 8, 2006, GCTC notified Smith in writing that she had been terminated.

Smith claims she was terminated for reporting the systematic fraud and abuse that took place at the GCYA facility to DCF, DJJ, and to GCYA's management team. In response, defendants insist Smith's four months at the GCYA facility were turbulent and rife with argument and disagreement over many of GCYA's policies. GCTC's chief executive officer, Jeff Kaplan, who made the decision to fire Smith, testified he did so on the basis of multiple incidents and complaints regarding Smith he received from employees, including members of his management team. In one such incident, which particularly disturbed Kaplan, Smith claimed to have witnessed a serious act of sexual aggression by one youth against another on a security tape she reviewed. According to Kaplan, other GCYA staff saw nothing on the tapes; additionally, DCF investigated and found the claim unsubstantiated. Kaplan stated he terminated for Smith for other reasons as well, including her conduct in agreeing to mail a letter for a youth to someone not on the youth's correspondence list and to secretly give the reply to the youth; spreading untrue rumors among the youths about the reasons other staff members had left the facility and falsely claiming that two staff members had been dishonorably discharged from the military; regularly challenging management in front of other staff during meetings; and violating the therapist/patient boundary by "acting out in front of kids" when she questioned a nurse in front of a youth about the allegedly altered medication form.

After her termination, Smith filed an administrative complaint with the Occupational Safety and Health Administration ("OSHA") naming PSI only. (Doc. 75-8, at 105–09). According to the complaint, by reporting the above acts of fraud and abuse, and by objecting to these acts, Smith engaged in protected activity under the whistleblower provision of Section 806 of the Corporate and Criminal Fraud Accountability Act, also known as the Sarbanes-Oxley Act. This statute prohibits retaliation against an employee who reports violations of the fraud provisions of the Sarbanes-Oxley Act, rule or regulation of the Securities and Exchange Commission, and/or any provision of Federal law relating to fraud against shareholders. 18 U.S.C. § 1514A. She also alleged that based on her

complaints "PSI's investors unknowingly purchased stock in a company whose potential for civil lawsuits and even criminal liability were much greater than advertised." Smith asserted she was terminated by PSI in retaliation for her whistleblowing activity.

OSHA conducted an investigation, responding with a final report dated January 8, 2007 (doc. 77-2), in which it concluded that Smith's complaint did not fall within the scope of Sarbanes-Oxley, because "[Smith] brought to light incidents of abuse against youths in a correctional setting, which does not constitute violations of" any of the laws or rules enumerated in 18 U.S.C. § 1514A, and thus dismissed her complaint.[3] Smith then filed a complaint in state court, which included her claim under Sarbanes-Oxley and a new claim for violation of the Florida Whistle-Blower Act. Defendants removed the action to this court on January 2, 2008, and have now moved for summary judgment. Before proceeding to the summary judgment motion, the court resolves several preliminary matters.

**Striking of Second Amended Complaint**

On October 7, 2008, Smith moved for leave to amend her First Amended Complaint to supply the correct name for GCTC rather than referring to GCYA, and to add two additional claims for retaliation. On November 5, 2008, the court granted the motion to correct GCTC's name but denied the motion to amend in all other respects. Smith's Second Amended Complaint remains in the court's electronic file and defendants have not answered it. The court notes that, in addition to adding two new claims, the Second Amended Complaint also added new factual information, changes Smith did not seek or receive leave of court to make. Thus, the Second Amended Complaint is STRICKEN from the court's docket, and the court proceeds on the First Amended Complaint with the exception of treating that complaint as though all references to Gulf Coast Youth Academy were made to Gulf Coast Treatment Center, Inc.

**Plaintiff's Rule 72 Objections**

Plaintiff moved the court to reopen discovery under Fed. R. Civ. P. 56(f). Defendants promptly responded, and plaintiff then filed a motion for leave to file a reply to

---

[3] OSHA also questioned whether Smith's employer, GCTC, was covered by Sarbanes-Oxley, but declined to address this issue because of its finding that Smith's conduct was not covered under the act.

Case No. 3:08cv3/MCR/EMT

defendants' response.  In her motion, plaintiff argued that discovery should be reopened based on defendants' withholding of information showing that GCTC's CEO Jeff Kaplan had knowledge of plaintiff's protected conduct at the time he made the decision to terminate her.  In response, defendants generally argued that they have complied with all requests for discovery materials except the "Schleuss report," which was prepared at the direction of counsel in connection with litigation and is thus privileged.  After full briefing on the issue, the magistrate judge denied both of plaintiff's motions.  Plaintiff has filed two objections (doc. 131) to the magistrate judge's order under Fed. R. Civ. P. 72(a), both of which the court rejects as meritless.

A magistrate judge's non-dispositive orders will not be reversed unless they are clearly erroneous or contrary to law.  Fed. R. Civ. P. 72(a).

Plaintiff's first objection is that the magistrate judge stated no reason for denying her leave to reply although there was good cause to permit one.  The rules do not permit a party to file a reply absent a showing of good cause.  Loc. R. 7.1(C)(2).  This is a factual determination, and therefore the court will not reverse absent a "'definite and firm conviction that a mistake has been committed.'"  *Clark v. Milam*, 155 F.R.D. 546, 547 (S.D.W.Va. 1994) (citations omitted).  Plaintiff argued good cause existed because defendants attached "new" evidentiary materials to their opposition to her motion.  The evidentiary materials introduced included excerpts from the depositions of Jeffrey Kaplan and Cheryl Schleuss (docs. 93-2 and 93-3) and a new affidavit of defendants' counsel, with attached privilege logs and correspondence between counsel (doc. 94 and exhibits).  Except for the affidavit, plaintiff's counsel had previously seen all of this material, and in fact had previously filed the full text of the depositions with the court in violation of Loc. R. 26.2(A). The affidavit contained defendants' counsel's explanation that they had preserved defendants' privilege not to disclose the Schleuss report.  The affidavit refers solely to the conduct of counsel and the parties during discovery.  It does not justify reopening discovery.  Plaintiff further argues that the magistrate judge's summary denial of her motion for leave to reply should cause the court to question whether the magistrate judge's

decision "is based on good reason or bad." This argument merits no discussion. The court is satisfied that a summary denial was appropriate here.

Plaintiff also objects that "the magistrate judge erroneously assumed the Schleuss report to be privileged because created in anticipation of litigation." This presents a mixed question of law and fact, which subjects the magistrate judge's decision to *de novo* review. *Regional Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 712 (6th Cir. 2006); *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994). Contrary to plaintiff's suggestion, the magistrate judge did not "assume" the report was privileged. Rather, she specifically inspected the report *in camera* and found that it had been prepared at the request of counsel in anticipation of litigation. She also found that the defendants properly preserved their claim of privilege. Having reviewed the report, the court agrees. Generally, absent exceptions not applicable here, communications made by employees to corporate counsel in anticipation of litigation are privileged. *See Upjohn Co. v. United States*, 449 U.S. 383 (1981).

Plaintiff's Rule 72 objections are OVERRULED.

**Defendants' Motion to Strike**

Defendants move to strike Smith's declaration under Rule 12(f) of the Federal Rules of Civil Procedure, which provides that the court may strike redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). Although the court has considerable discretion in ruling on a motion to strike, motions to strike are generally disfavored. *Chambers v. Cooney*, 535 F. Supp.2d 1255, 1262–63 (S.D. Ala. 2008).

Defendants raise two points in their motion. First, defendants argue that Smith's declaration is invalid because it contains the language: "I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief." Defendants argue that the inclusion of the phrase "to the best of my knowledge and belief" "hedges her knowledge and, in doing so, fails to comply with Fed. R. Civ. P. 56(e)." The court disagrees. The declarations statute, 28 U.S.C. § 1746, does not "mandate strict compliance with the exemplary clause provided in the statute." *Matter of Muscatell*, 106 B.R. 307, 309 (Bankr. M.D. Fla. 1989). The statute itself provides that a declaration must

be "substantially" in the form provided: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct." 28 U.S.C. § 1746(2). So long as the declaration contains the phrase "under penalty of perjury" and states that the document is true, the verification requirement is met. *Matsuda v. Wada*, 101 F. Supp.2d 1315, 1322 (D. Haw. 1999).

Defendants also argue that portions of Smith's declaration should be stricken because they are not within her personal knowledge as required by Fed. R. Civ. P. 56(e)(1) and Fed. R. Evid. 602. Defendants object to certain portions of the declaration on grounds that Smith could not have witnessed the events described. For example, in paragraph 18, Smith references weekend group meetings which, at deposition, she conceded she never attended. Defendants object to other portions because they contain Smith's understanding of regulations without any explanation of the basis of her knowledge of those regulations. For example, in paragraph 25, Smith declares that unspecified "[r]egulations" bar the punishment of youths who refuse to take medication.

The court finds that certain of the portions of Smith's declaration are indeed outside the scope of her personal knowledge or are otherwise unduly speculative, but finds it unnecessary to rule on the admissibility of each individual paragraph of the declaration. Much of the declaration is merely repetitive of Smith's own deposition testimony. Moreover, these paragraphs, even if taken as true, do not create a disputed issue of material fact. The only paragraph the court need address is paragraph 23 wherein plaintiff states "GCYA was billing Medicaid for services that never occurred. I repeatedly objected to Hughes of (sic) false documentation of the undelivered services involved." Smith offers no evidentiary support for her understanding of GCYA's billing practices, nor does she explain how she would be in a position to observe the bills sent to Medicaid or monitor the payments received. This statement appears to be entirely outside her personal knowledge. Defendants' motion to strike is GRANTED as to paragraph 23 and DENIED as moot as to the remainder.

**Summary Judgment Motion**

*Standard of review*

A motion for summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A factual dispute is "'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." *Anderson*, 477 U.S. at 248; *Tipton v. Bergrohr GmbH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted). Nevertheless, a general denial unaccompanied by any evidentiary support will not suffice. Fed. R. Civ. P. 56(e)(2); *see, e.g., Courson v. McMillian*, 939 F.2d 1479 (11th Cir. 1991); *Hutton v. Strickland*, 919 F.2d 1531 (11th Cir. 1991). Furthermore, the court is not obliged to deny summary judgment for the moving party when the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *See Anderson*, 477 U.S. at 249. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Indeed, the existence of a scintilla of evidence in support of the nonmovant's position is insufficient; the test is "whether there is [evidence] upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Id.* at 252. The moving party has the initial burden of showing the absence

of a genuine issue as to any material fact. *See Adickes,* 398 U.S. at 157; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Once the movant satisfies its burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (emphasis omitted). Otherwise stated, the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

### *Count I: Florida Whistle-Blower Act*

Defendants move for summary judgment on grounds that Smith's activity was not protected by the Whistle-Blower Act, and also that, to the extent Smith did engage in protected conduct, her termination was not in retaliation for any protected activity.

The Whistle-Blower Act prohibits employers from taking adverse action against an employee for: (1) disclosing or threatening to disclose an activity that is in violation of a law, rule, or regulation; (2) providing information to a person conducting an investigation into such an alleged violation by the employer; and (3) objecting to or refusing to participate in any such violation.[4] To prevail on a claim under this statute, a plaintiff must "must prove that the activity, policy or practice objected to is, in fact, in violation of a law, rule or regulation."[5] *White v. Purdue Pharma, Inc.*, 369 F. Supp.2d 1335, 1337 (M.D. Fla. 2005);

---

[4] Smith alleges violations under subsections (1) and (3) only.

[5] This does not require Smith on summary judgment to prove that violations occurred, but it does mean she must come forward with some evidence of acts which, if proven, would be actual violations. Smith's argument that she need only show a good faith belief that the employer's conduct or policy violates the law is incorrect and her reliance on *Golf Channel* is seriously misplaced. The *Golf Channel* court did not construe the entire whistle-blower statute—indeed, the decision was limited to the question of whether an employee must give written notice under all three subsections or only subsection (1). *Id.* at 563. *Golf Channel* says nothing about whether the employee must show actual violations of the law as opposed to merely a good faith belief violations occurred.
    Smith cites several other cases in support of her position, but they are equally inapposite. She cites some cases for the proposition that Title VII's good faith standard should be imported into the Whistle-Blower Act, but these cases merely hold that the Title VII burden-shifting scheme should be used when analyzing claims; this scheme comes into play only after an employee has identified an actual violation. Two other cases, *Padron v. BellSouth Telecom., Inc.*, 196 F. Supp.2d 1250, 1256 (S.D. Fla. 2002) and *Rivera v. Torfino Enters., Inc.*, 914 So.2d 1087, 1089 (Fla. 4th DCA 2005), involve allegations of acts which, if proven, would

*United States* ex rel. *Vargas v. Lackmann Food Svc., Inc.*, 510 F. Supp.2d 957, 968 (M.D. Fla. 2007). *See also Taylor v. Memorial Health Systems, Inc.*, 770 So.2d 752, 754 (Fla. 5th DCA 2000) (applying actual violation standard). "Law, rule, or regulation," refers to federal, state, or local statutes, ordinances or regulations formally "adopted" by an appropriate body, which are applicable to the employer and pertain to the employer's business. *See New World Communications of Tampa, Inc. v. Akre*, 866 So.2d 1231, 1233–34 (Fla. 2d DCA 2003). Finally, before bringing an action under subsection (1) of the statute an employee must provide the employer with "written notice and a reasonable opportunity to cure the lawful activity." *Golf Channel v. Jenkins,* 752 So.2d 561, 566 (Fla. 2000).

Smith claims GCYA retaliated against her because she objected to having to report abuse complaints to GCYA's management prior to reporting them to the state; objected to falsifying an internal log; and objected to the alteration of a form used by the defendants to document a youth's refusal to take prescribed medication. Smith also claims GCYA retaliated against her for reporting sexual and physical abuse occurring at the facility to DCF.

As a threshold finding, the court concludes that, with the exception of the abuse reports, Smith cannot show she engaged in conduct protected under the Whistle-Blower Act. There is no evidence before the court that the conduct about which Smith complains, if proven, would be a violation of a law, rule, or regulation within the meaning of the statute.[6] *See, e.g., Johnson v. Stein Mart, Inc.*, No. 3:06-cv-341, at *6, 2007 WL 1796265 (M.D. Fla. 2007). Regarding the abuse allegations, Smith has nothing to show that the abuse actually occurred. On the matter of the sexual abuse, Smith claims the control room operator approached her and said that the victim complained of being forced to masturbate in front of another youth. Smith also claims that the operator told her the operator and

---

be "clearly" illegal, and thus there was no need for those courts to consider whether the employee's good faith belief was sufficient.

[6] There is also no evidence Smith gave the defendants written notice and a reasonable opportunity to correct the alleged violation. *See Golf Channel*, 752 So.2d at 566.

other staff had reviewed the security tapes and determined that the victim's complaint was true. In deposition, however, the control room operator denied telling Smith about the abuse. Additionally, although the video no longer exists, the operator testified she reviewed the tapes, and the conduct does not appear on them. Finally, the evidence shows that management and the state each investigated the report and found the allegations unsubstantiated. Regarding the report of physical abuse, Smith claims that a youth told her a staff member restrained and attacked him. Again, Smith has no admissible evidence showing this ever occurred; further, as with the alleged sexual abuse, management investigated and found the claim unsubstantiated. Lastly, with respect to both the sexual and physical abuse, it is undisputed that Smith did not report these incidents to defendants in writing prior to contacting the state.

The court finds Smith has no evidence that the defendants are responsible for violating a law, rule, or regulation within the meaning of the Whistle-Blower Act, and for that reason, summary judgment for defendants on Count I is GRANTED.

### Count II: Sarbanes-Oxley Act

Smith also alleges defendants violated the Sarbanes-Oxley Act. This Act provides a private right of action to "whistleblower" employees who believe they have suffered a retaliatory act as a result of certain protected conduct, including providing information about or assisting in an investigation of various acts of corporate fraud. 18 U.S.C. § 1514A(a). To prevail on a whistleblower claim under Sarbanes-Oxley, the employee must show that (1) she engaged in protected conduct; (2) the employer knew that the employee engaged in the conduct; (3) the employee suffered an unfavorable personnel action; and (4) the protected conduct was a contributing factor in the personnel action. *Fraser v. Fiduciary Trust Co. Int'l*, 417 F. Supp.2d 310, 322 (S.D.N.Y. 2006).

In order to bring a claim under the Sarbanes-Oxley Act, an employee must first "file a complaint with the Occupational and Health Safety Administration ("OSHA") and afford OSHA the opportunity to resolve the allegations administratively." *Willis v. Vie Financial Group, Inc.*, No. 04-435, 2004 WL 1774575, *6 (E.D.Pa. Aug. 6, 2004) (citing 18 U.S.C.

§ 1514(b)(1)(A)).[7]  The district court "can only conduct a 'de novo review' of those [Sarbanes-Oxley whistleblower] claims that have been administratively exhausted." *Bozeman v. Per-Se Tech. Inc.*, 456 F. Supp.2d 1282, 1357 (N.D. Ga. 2006) (citing *Willis,* 2004 WL 1774575 at *6; § 1514A(b)(2)(D); and 29 C.F.R. § 1980.103(b, d)). *See also McClendon v. Hewlett-Packard Co.*, No. 05-087-S-BLW, 2005 WL 2847224, *2-4 (D.Idaho Oct. 27, 2005) (holding that a district court can only conduct a "de novo review" of those claims that have been administratively exhausted).  In *Bozeman*, 456 F. Supp.2d at 1358, the court concluded that because the plaintiff had "failed to specifically name [the proper defendants] in the heading of his administrative complaint," the defendants were entitled to summary judgment for plaintiff's failure to exhaust his administrative remedies.  Similarly, in *Hanna v. WCI Communities, Inc.*, 2004 U.S. Dist. LEXIS 25652, *7-9 (S.D.Fla. Nov. 15, 2004), the court dismissed the plaintiff's Sarbanes-Oxley claim against the individual defendant whom plaintiff had failed to name as a respondent in his OSHA complaint.  In the instant case, Smith did not name PBS or GCTC in the heading of her administrative complaint or indeed *anywhere* in her complaint. (Smith Depo., Ex. 15, doc. 75-8, 101–110.)   Thus, Smith is unable to establish a claim against either of these defendants due to her failure to properly exhaust her administrative remedies with respect to them. *See Hanna*, 2004 U.S. Dist. LEXIS 25652 a *7-9.  If at all, Smith's Sarbanes-Oxley whistleblower claim can lie against PSI, the only defendant named in her administrative complaint.

PSI argues it was not Smith's employer, and thus her claim against it fails.  Smith maintains PSI was her employer.  Under Sarbanes-Oxley, "employee" is defined as "an individual presently or formerly working for a company or company representative, . . . or an individual whose employment could be affected by a company or company representative."  29 C.F.R. § 1980.101.  A "company representative" is "any officer, employee, contractor, subcontractor, or agent of a company."  *Id*.

---

[7]  Section 1514(b)(1)(A) provides for filing the administrative complaint with the Secretary of Labor. The Secretary has delegated that responsibility to OSHA. *See* 29 C.F.R. § 1980.103(e).

As a threshold matter, the court notes that Smith does not allege in her First Amended Complaint that PSI was her employer. Rather, Smith names GCYA—and only GCYA—as her employer. As noted, Smith obtained leave of court to change references in her complaint to the name of the corporation from GCYA to GCTC, but she never sought or obtained leave to allege that PSI was her employer. PSI is entitled to summary judgment because Smith has not alleged that PSI was her employer, a necessary element of a Sarbanes-Oxley whistleblower claim. *See, e.g., Fraser*, 417 F. Supp.2d at 321–22.

Even if PSI were properly alleged to be Smith's employer, there is no evidence to support an employment relationship between PSI and Smith. Smith points to scant evidence of employment by PSI: a health insurance option sheet marked "Psychiatric Solutions Inc.," and the fact that a PSI official was sent to the GCYA facility to investigate her post-termination grievances. These items are legally insufficient to establish an employment relationship between Smith and PSI. The insurance sheet does not establish that PSI had control over Smith. *See Verchick v. Hecht Invs., Ltd.*, 924 So.2d 944, 945–46 (Fla. 3d DCA 2006) (finding that W-2 tax forms alone did not establish employment relationship). Nor does PSI's investigation, under these circumstances, evince an employment relationship. *See Russell v. Enter. Rent-A-Car Co. of R.I.,* 160 F. Supp.2d 239, 256 (D.R.I. 2001) (citing *Mas Marques v. Digital Equip. Corp.*, 637 F.2d 24, 26–28 (1st Cir. 1980)) (discussing *Mas Marques*, where "parent company did express a willingness to investigate the plaintiff's discrimination complaint but did not concede responsibility for its subsidiary's actions").

On the other hand, there is voluminous documentary evidence to suggest that PBS and GCTC were Smith's employers. This includes an employment application, employee handbook, paychecks, W-2 form, and Smith's termination letter. Smith also testified that her supervisors were employees of GCTC and that she was terminated by Kaplan, the CEO of GCTC. Moreover, at deposition, Smith consistently referred to her employer as

GCYA/GCTC, not PSI.[8]  Additionally, PSI insists that it was not Smith's employer and notes that the management of PSI is entirely distinct from the management of its subsidiaries. PSI also contends that it does not exercise day-to-day control over its subsidiaries and these subsidiaries maintain separate financial records.  (Kaplan Decl. at ¶¶ 5, 6.)  Jeff Kaplan, the CEO of GCTC, testified that GCTC determines its own policies, procedures, and forms.  (Kaplan Depo. at 17.)  Kaplan also holds no position in PSI or PBS.  (*Id.* at 9, 11, 14.)  This evidence is undisputed.

For all of the foregoing reasons, the court concludes that Smith is unable to establish a claim pursuant to the Sarbanes-Oxley Act against any of the defendants. Defendants' motion for summary judgment on Count II is therefore GRANTED.

Accordingly, it is hereby ORDERED that:

1. Plaintiff's Second Amended Complaint (doc. 104) is STRICKEN from the court's docket.

2. Plaintiff's Rule 72 objections (doc. 131) to the November 7, 2008, order of the magistrate judge are OVERRULED.

3. Defendants' motion (doc. 96) to strike plaintiff's declaration is GRANTED in part and DENIED in part as moot.

4. Defendants' motion for summary judgment (doc. 75) is GRANTED.

5. The clerk is directed to enter judgment for defendants and to close this case. Plaintiff shall take nothing from this action.

**DONE and ORDERED** this 31st day of March, 2009.

*s/ M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[8] Q: "And when did you make that call [to PSI]?"  A: ". . . it was many days after my employment when I was unable to get information from my employer as to whether I was still an employee."  Q: "It was after you were—after you left the facility, correct?"  A: ". . . When I did not hear back from my employer, I called PSI and asked for some help."  Smith Depo. at 94.

Case No. 3:08cv3/MCR/EMT