IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LESLIE SMITH,
      Plaintiff,

v.                                   Case No.: 3:08cv3/MCR/EMT

PSYCHIATRIC SOLUTIONS, INC., et al.,
      Defendants.
_____/

## ORDER, REPORT AND RECOMMENDATION

This case began as an action for retaliatory discharge under state and federal law.  It is now before the undersigned upon referral by the district court pursuant to Fed. R. Civ. P. 72(a) and N.D. Fla. Loc. R. 72.3 to conduct evidentiary and such other necessary proceedings and to enter a Report and Recommendation on the motion for attorneys' fees and sanctions filed by Defendants Psychiatric Solutions, Inc. ("PSI"), Premier Behavioral Solutions, Inc. ("PBS"), and Gulf Coast Treatment Center, Inc. ("GCTC") (collectively, "Defendants") (*see* Doc. 204, referring Doc. 156).  Plaintiff Leslie Smith ("Plaintiff"), through her attorney Richard E. Johnson ("Johnson"), filed a response to Defendants' motion, opposing their demand for attorneys' fees pursuant to Fla. Stat. § 448.104; on his own behalf Johnson also opposes Defendants' request for sanctions against counsel pursuant to 28 U.S.C. § 1927 (*see* Doc. 160).[1]  Additionally pending is Johnson's motion to file the affidavit of

---

[1]  Defendants initially also sought fees against Plaintiff and her counsel in the form of sanctions pursuant to Fla. Stat. § 57.105, but later withdrew that demand (Doc. 250).  Defendants also clarified that their demand for sanctions pursuant to § 1927 is against Plaintiff's counsel only, not Plaintiff (*id.*).  Accordingly, Defendants now seek only fees against Plaintiff under § 448.104 and sanctions against her counsel pursuant to § 1927.

   Defendants also sought the taxation of costs against Plaintiff in this matter, which demand Plaintiff originally opposed (Docs. 155, 157).  Following referral, the undersigned directed the parties to make a good faith effort to resolve their fees, sanctions, and costs dispute, as it appeared from the record that they had not yet satisfactorily done so (Doc. 212).  As directed, the parties conferred, and they subsequently advised the court they had reached agreement with respect to the matter of costs, but not attorneys' fees or sanctions (Doc. 217).  In accordance with the parties' agreement, the clerk of court taxed costs against Plaintiff in the amount of $5974.68 (Doc. 222).

attorney Michael D. Kohn ("Kohn") (Doc. 286), and Plaintiff's motion for sanctions against Defendants pursuant to Fed. R. Civ. P. 11 (Doc. 294). Defendants oppose both of these motions (respectively, Doc. 287 and Docs. 293, 296). For the reasons that follow, the court denies Johnson's motion for leave to file Kohn's affidavit. Additionally, the court recommends that Defendants' motion for attorneys' fees and sanctions be granted in part and denied in part and that Plaintiff's motion for Rule 11 sanctions be denied.

## BACKGROUND[2]

As an initial matter, the court finds it appropriate to identify the parties' counsel and to discuss the current status of their representation. The docket reflects that Johnson has represented Plaintiff as lead counsel in this case from its commencement in state court. In addition to Johnson, attorneys Andrea Lynn Reino ("Reino") and Melissa Ann Horwitz ("Horwitz")—from Johnson's firm, the Law Offices of Richard E. Johnson—have also represented Plaintiff during the course of the litigation. After Defendants filed their motion for sanctions, attorney Marie Mattox ("Mattox") entered an appearance for Johnson (Doc. 209).[3] The docket reflects that no counsel has entered an appearance for either Reino or Horwitz. Attorney Mark Warfield Peters ("Peters"), whose law firm is based in Nashville, Tennessee, has represented Defendants pro hac vice in this case from the time of its initiation. Additionally, attorney Sneha Channapasappa ("Channapasappa"), from Peters' firm, and local attorneys Alfred Benjamin Gordon, III ("Gordon"), and Jamie McEachern Avery ("Avery") have appeared for Defendants.

In August 2009 Peters filed a notice of withdrawal of counsel for Channapasappa (Doc. 178), in February 2010 Johnson filed a notice of withdrawal for Reino (Doc. 220), and in September 2011 Gordon submitted a notice of withdrawal for Avery (Doc. 306). None of these filings reflects that

---

[2]   In terms of its scope and the resources utilized, this fees and sanctions dispute threatens to swallow the underlying litigation. *See* Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d  40 (1983) (stating that "[a] request for attorney's fees should not result in a second major litigation."). The record in this case is voluminous, comprising many thousands of pages of documents. Although the court is cognizant of this and does not wish to burden the record even further, unfortunately, because the history of this case is protracted (much of which history is implicated in the parties' current dispute) and quite involved, the facts that follow are lengthy and detailed.

[3]   Although Mattox has appeared only for Johnson, she has on occasion made a submission under her signature on behalf of (or with respect to matters pertaining to) Plaintiff (*see, e.g.,* Docs. 249, 255, 257, 260, and 270). As Defendants have made no timely objection to such filings, and the filings appear to be relevant to both Johnson and Plaintiff, the court has considered them where appropriate.

the requirements set forth in this court's local rules for the withdrawal of counsel have been satisfied. *See* N.D. Fla. Loc. R. 11.1(F) (stating that attorney may only withdraw by written leave of court obtained after giving ten days notice to the affected party or client and to all other counsel of record). None states that at least ten days notice was given before filing the request to withdraw nor does the docket reflect that the district court has given written leave to withdraw to any of these attorneys. Regrettably, the clerk did not refer the notices to chambers for action, and thus the district court was not given an opportunity to review them and advise the parties of their deficiencies. Regardless, it remains the attorneys' responsibility to comply with the court's local rules and to obtain written leave of court to withdraw.

Having failed to submit appropriate notice and to acquire the court's written authorization to withdraw, Reino, Channapasappa, and Avery remain on the docket as counsel of record in this case (notwithstanding the clerk's erroneous termination of Reino's representation (*see* style of case on docket sheet noting termination in February 2010) and discontinuation of electronic noticing to Avery (*see* Doc. 307)). Nevertheless, the court notes the passage of time with respect to each attorney's attempted withdrawal and the apparent lack of any objections having been voiced to date by an affected client or other counsel. Accordingly, this court will recommend to the district court that Reino, Channapasappa, and Avery be permitted at this time to formally withdraw as counsel for their respective clients.[4]

The following facts are taken from the district court's March 31, 2009, order granting summary judgment in Defendants' favor on Plaintiff's claims brought pursuant to the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A, and the Florida Private Whistleblower Act ("FWA"), Fla. Stat. §§ 448.101, *et seq.* (*see* Doc. 150). Plaintiff is a therapist who worked for less than four months in 2006 at a treatment center—operated by GCTC—that offers a program for juvenile delinquents who have been court-ordered to attend. The program and the physical facility are generally known as the Gulf Coast Youth Academy ("GCYA"), which is operated under contract with the Florida Department of Juvenile Justice ("DJJ"). The DJJ and the Florida Department of

---

[4] If the district court accepts this court's recommendation regarding the withdrawal of Reino, Channapasappa, and Avery, the docket shall reflect that the remaining attorneys of record in this case are Johnson and Horwitz for Plaintiff, and Peters and Gordon for Defendants.

Children and Families have regulatory jurisdiction over GCYA.  PSI is a publicly traded company.
PBS is a subsidiary of PSI and has a contract with the DJJ to operate the GCYA program.  The
GCYA is located in a Fort Walton Beach, Florida, facility owned by GCTC.  Thus, simply put, the
corporate structure of the three Defendant entities is that PSI owns PBS, which owns GCTC (*see id.*
at 2, n.1).

        According to Plaintiff, while working at the treatment center she uncovered serious physical
and sexual abuse of juveniles, Medicaid fraud, and a suspiciously altered medication form that
suggested to her that a juvenile had been forcibly medicated (*see* Doc. 150 at 1).  Plaintiff reported
some of these incidents to state officials and to GCYA's management (*id.* at 2).  Immediately after
complaining to GCYA about the altered medication form, Plaintiff was escorted from the GCTC
premises and within a short time her employment was terminated.  Thereafter, asserting that she had
been fired in retaliation for whistleblowing activity, Plaintiff filed an administrative complaint,
which named PSI only, with the Department of Labor through the Occupational Safety and Health
Administration ("OSHA") concerning her allegations of abuse, fraud, and an altered medication form
(*id.* at 4).  According to Plaintiff's complaint, by reporting and objecting to the complained-of acts
she engaged in protected activity as contemplated in Section 806 of the SOX (*id.*).  *See* 18 U.S.C.
§ 1514A (prohibiting retaliation against an employee who reports violations of the fraud provisions
of SOX, rule or regulation of the Securities and Exchange Commission ("SEC"), and/or any
provision of federal law relating to fraud against shareholders).  Plaintiff maintained that PSI's
investors were effectively defrauded through their unknowing purchase of stock in a company with
a potential exposure to significant criminal and civil liability (*id.* at 4–5).  After an investigation,
OSHA dismissed Plaintiff's complaint.  It concluded that the complaint did not fall within the scope
of the SOX because the allegations concerned youths in a correctional setting, which did not
constitute violations of any of the laws or rules enumerated in the statute (*id.* at 5).  The OSHA
ruling also questioned whether Plaintiff's employer, identified as GCTC, was governed by the SOX
but it did not reach the issue in light of its conclusion that Plaintiff's conduct was not covered under
the statute (*id.* at n.3).

        The docket reflects that in January 2007, through a complaint signed by Reino, Plaintiff
brought suit in the First Judicial Circuit for Okaloosa County, Florida, under the FWA as well as the

Florida Public Whistleblower Act, Fla. Stat. §§ 112.3187, *et seq.* (*see* Doc. 1-2).  GCYA, which was named as a Defendant at that time, filed a motion for partial dismissal (Doc. 1-6), and  PSI and PBS filed a motion to dismiss (Doc. 1-8).  After discovery commenced, Plaintiff moved to amend her complaint (Doc. 1-18).   Following a hearing, the state court on December 27, 2007, dismissed Plaintiff's claims arising under the Florida Public Whistleblower Act as untimely; denied without prejudice PSI's and PBS's motion to dismiss that was based on lack of jurisdiction; and granted Plaintiff's motion to amend insofar as she proposed to assert a claim under the SOX and denied the motion insofar as it asserted an untimely claim under the False Claims Act (Doc. 10-2).  Defendants removed the case to this federal forum on January 2, 2008 (*see*, *generally*, Doc. 1).

Following removal, the district court issued initial and final scheduling orders (Docs. 7, 15), and the parties proceeded through an extended and highly contentious period of discovery in this forum.  On March 4, 2008, Plaintiff—through Horwitz— filed an amended complaint which, citing the authority of the state court's order prior to removal, asserted claims under the SOX and FWA (*see* Doc. 25).  On April 25, 2008, the undersigned granted the parties' consented motion to extend the discovery deadline (from June 1, 2008, to August 1, 2008), as well as other related deadlines (*see* Docs. 38–40).

On  May 15, 2008, Plaintiff—through Horwitz—filed a Fed. R. Civ. P. 37 motion to compel discovery and a motion for a case management conference (Docs. 45, 46).  The court directed the parties on May 19, 2008, to confer in a good faith effort to resolve their dispute without the court's intervention and pointedly warned Plaintiff that "[d]eposition scheduling is not the type of matter deserving of the court's limited time"  (Doc. 48 at 1, n.1).  On May 31, 2008, after Defendants had responded to the pending motions but before this court had ruled on them (Docs. 49, 50), Plaintiff—through Johnson—filed a motion to compel depositions; the motion requested the court's expedited review (Doc. 51).  On June 3, 2008, Plaintiff—through Johnson—filed a notice advising the court that the parties had reached agreement concerning the scheduling of the depositions, which he said mooted Plaintiff's most recent motion to compel and, "at least temporarily," mooted her motion for a case management conference (Doc. 55).  The same date, this court issued an order ruling on Plaintiff's motion to compel depositions and her motion for a scheduling conference (Doc. 56).  The court advised Plaintiff that prior to learning the parties had resolved the matters in dispute

the court had spent considerable time drafting an order addressing her motions and Defendants' responses. The court, stating that its then-unnecessary draft order had been "quite scathing" in its condemnation of the conduct of Plaintiff's counsel, advised that it likely would impose sanctions against counsel and in an order issued September 12, 2008, did so, awarding the amount of $1470.60 (Doc. 81). In an earlier, comprehensive seven-page order, the court denied in its entirety Plaintiff's pending Rule 37 motion to compel discovery (Doc. 58). Addressing whether expenses should be awarded to Defendants, the court stated that "much like the last dispute between these parties, Plaintiff appears primarily responsible for the needless involvement of this court." (*Id.* at 7). The court ultimately concluded, however, that circumstances existed that would make an award of expenses unjust and thus declined to impose sanctions against Plaintiff (*id.*).

After Defendants timely filed a motion for summary judgment on August 21, 2008 (Docs. 75–77), Plaintiff filed a response in opposition to Defendants' statement of material facts (Doc. 86), and a response in opposition to the motion for summary judgment (Doc. 87).[5] Also, through Johnson, Plaintiff filed a Rule 56 motion for additional discovery to respond to Defendants' motion for summary judgment (*see* Doc. 88, rejected for lack of attorney consultation certificate at Doc. 89; amended motion at Doc. 91), which Defendants opposed (Doc. 93; *see also* Doc. 94, affidavit in support, and Doc. 95, "Schleuss Report" filed under seal). Plaintiff, through Johnson, sought leave to file a reply (Doc. 108). On November 7, 2008, the undersigned denied Plaintiff's amended Rule 56(f) motion as well as her motion for leave to file a reply (Doc. 122).

On October 7, 2008, with Defendants' summary judgment motion still pending, Plaintiff—through Horwitz—sought leave to file a second amended complaint (*see* Docs. 101, 106; proposed second amended complaint at Doc. 104). Defendants opposed the motion in part (Doc. 110). The district court granted the motion to amend to the extent that Plaintiff sought to correct the name of GCYA to GCTC but denied it in all other respects (Doc. 119). A second amended complaint, signed by Horwitz, was filed November 6, 2008 (Doc. 120).

In its March 31, 2009, order addressing Defendants' motion for summary judgment, the district court first ordered that the second amended complaint at Document #104 be stricken from

---

[5] Horwitz signed the former document, which also bore Johnson's name but not his signature, and Johnson signed the latter document, which also bore Horwitz' name but not her signature.

the docket and instructed that it would proceed on the first amended complaint,[6] "with the exception of treating that complaint as though all references to Gulf Coast Youth Academy were made to Gulf Coast Treatment Center, Inc." (Doc. 150 at 5). Additionally, the district court overruled Plaintiff's Rule 72 objections to this court's November 7, 2008, order denying her amended Rule 56(f) motion and request to file a reply, finding the objections "meritless" (*id.* at 6). Finally, the court granted Defendants' motion to strike Plaintiff's declaration, to the extent one paragraph of the declaration was stricken (*id.* at 8).

Turning to the substance of Defendants' motion for summary judgment, the district court first addressed Plaintiff's state law claim under the FWA, stating that to prevail on a claim under this statute a plaintiff "'must prove that the activity, policy or practice objected to is, in fact, in violation of a law, rule or regulation.'" (Doc. 150 at 10) (citation omitted). The district court noted that while on summary judgment this standard did not require Plaintiff to prove that violations had in fact occurred it did require her to come forward with some evidence of acts, which if proven, would be actual violations (*id.* at n.5). The district court sharply criticized Plaintiff's argument that she need only show a "good faith belief" that her employer's conduct or policy violated the law, stating that such a position was wholly unsupported by the case law Plaintiff had cited in support, in particular The Golf Channel v. Jenkins, 752 So. 2d 561 (Fla. 2000) (*id.*). Finding that Plaintiff had presented "no evidence" that Defendants were responsible for violating a law, rule, or regulation within the meaning of the FWA, the court granted summary judgment to Defendants on that claim (*id.* at 12). More specifically, the court noted that, as to the allegations of fraud and an altered medication form, there was no evidence that the conduct, if proven, would be a violation of a law, rule, or regulation within the meaning of the FWA (*id.* at 11). As to the allegations of sexual abuse and physical abuse, the court found that Plaintiff had put forth nothing to show that the asserted abuse actually occurred (*id.* at 12). Moreover, although required to do so, Plaintiff had failed to inform Defendants of these incidents in writing prior to contacting state officials to report them (*id.*).

The district court then addressed Plaintiff's SOX claim, on which it also granted summary judgment to Defendants. The court noted that Plaintiff had failed to name PBS or GCTC in her

---

[6] Thus the court relied on the first amended complaint (Doc. 25) and not the second amended complaints filed October 7, 2008 (Doc. 104), and November 6, 2008 (Doc. 120).

administrative complaint and thus could not establish a claim against either Defendant due to her failure to properly exhaust her administrative remedies with respect to them (Doc. 150 at 13).  Nor could Plaintiff make out a claim against PSI, the only Defendant named in the OSHA complaint, because she had failed to allege that PSI was her employer, a necessary element of a SOX whistleblower claim (*id.* at 14).  Even if Plaintiff had named PSI as her employer, however, the court found she had failed to come forward with evidence that supported an employment relationship between PSI and herself (*id.*).

Plaintiff appealed the district court's order to the Eleventh Circuit Court of Appeals.  Shortly after  it heard oral argument, the appellate court issued an unpublished opinion affirming the district court's rulings.  *See* Smith v. Psychiatric Solutions, Inc., 358 Fed. App'x 76 (11th Cir. 2009) (per curiam) (*see also* Doc. 213).  Addressing the summary judgment rulings in its decision, the Eleventh Circuit first concluded that the district court had correctly applied the "actual violation" standard as opposed to the "good faith belief" standard on the FWA claim.  The appellate court noted, however, that even if the good faith belief standard were the correct standard to apply to a FWA claim and even if Plaintiff could make out a prima facie case of retaliation, she had failed to come forward with sufficient evidence of pretext.  *Id.* at 78.  On the SOX claim, the Eleventh Circuit concluded that Plaintiff had not produced any evidence that showed she had engaged in protected conduct.  Even if she had, the court added, dismissal of this claim on the grounds Plaintiff had failed to exhaust administrative remedies as to PBS and GCTC and was not an employee of PSI, as the district court had found, was proper.  *Id.*, n.2.  Following the Eleventh Circuit's decision, Plaintiff appealed to the United States Supreme Court, which on May 21, 2010, denied certiorari (*see* Doc. 237).

Defendants filed their motion for fees in April 2009, while Plaintiff's appeal was pending before the Eleventh Circuit (Doc. 156).  The district court deferred ruling on the motion pending disposition of the appeal (Doc. 161).  After the Eleventh Circuit issued its opinion in the case (*see* Doc. 213, mandate entered December 21, 2009), the district court referred this matter to the undersigned (Doc. 204).  Following referral, this court, after directing the parties to make a good faith attempt to resolve the dispute (Doc. 212), decided to hold Defendants' motion in abeyance pending the Eleventh Circuit's resolution of the appeal in a potentially instructive case, Alansari v. Tropic Star Seafood, Inc., 2009 WL 1616496 (N.D. Fla. 2009).  After the Eleventh Circuit  entered

its ruling in that case, *see* Alansari v. Tropic Star Seafood, Inc., 395 Fed. App'x 629 (11th Cir. 2010), as authorized by this court the parties supplemented their prior filings on the fees and sanctions dispute (*see* Doc. 248; Doc. 249, signed by Mattox only).  The court set the matter for oral argument and an evidentiary hearing on Defendants' motion.  In the same order the court directed Defendants to file a notice detailing the specific conduct allegedly engaged in by Plaintiff's counsel which Defendants contended vexatiously and unreasonably multiplied the proceedings in this case and thus warranted the imposition of attorneys' fees pursuant to § 1927 (Doc. 253).  After Defendants filed their notice ("§ 1927 Notice") (Doc. 264), Plaintiff, through Mattox, sought leave to file a motion for sanctions against defense counsel pursuant to § 1927, to which Defendants responded in opposition (Docs. 260, 263).  Finding no merit in Plaintiff's arguments for granting leave to file her untimely § 1927 motion, either in law or equity, this court denied Plaintiff's motion (Doc. 269).

At the April 19, 2011, evidentiary hearing on the motion for fees and sanctions, Johnson appeared for Plaintiff, Mattox appeared for Johnson, and Peters appeared for Defendants (*see* Doc. 278, transcript, at 2).  Peters, Johnson, and Plaintiff testified.  Defendants introduced one exhibit into evidence, which the court admitted (*see* Doc. 276-1, Defendants' Exhibit 1).  During the proceedings, and also in an order issued after the hearing to memorialize its instructions (Doc. 277), the court directed the parties to file supplemental briefs, including documents referenced during the evidentiary hearing but not introduced or placed into evidence at that time.  The court specified that only those particular exhibits could be filed (*id.* at 1).  As directed by the court, the parties timely submitted their final briefs and exhibits on May 18, 2011 (*see* Doc. 283, Defendants' exhibits; Doc. 284, Defendants' final brief; and Doc. 285, Plaintiff/Johnson's final response with attached exhibits, signed by Mattox and Johnson).  One week later, on May 25, 2011, Plaintiff, through Johnson only, submitted a motion seeking leave to file Kohn's affidavit (Doc. 286).  On June 22, 2011, Defendants filed a "Notice in Response to Plaintiff's Threatened Rule 11 Sanctions Motion . . . ." (Doc. 293).  This was followed, on June 24, 2011, by Plaintiff's motion for Rule 11 sanctions against Defendants, signed by Johnson only (Doc. 294).  After the Rule 11 motion was filed, Defendants also filed a response in opposition (Doc. 296).

## DISCUSSION

### Johnson's Motion to File Kohn's Affidavit [7]

In its order following the evidentiary hearing on the fees and sanctions dispute, this court clearly and firmly advised the parties that only evidence that had been identified at the hearing could be submitted and that such exhibits must be filed on or before May 18, 2011 (*see* Doc. 277). Johnson acknowledges his understanding of these instructions.  Yet Johnson now seeks to file a declaration that is neither authorized nor timely.   It was not identified at the evidentiary hearing—indeed, that Johnson anticipated submitting an affidavit or declaration was not even hinted at during the hearing—and the declaration was not filed until May 25, 2011.  Only if Johnson could show good cause for filing the declaration would the court permit him to file it.  For the reasons that follow, the court concludes he has not.

In seeking leave to file the declaration, Johnson states that it was only in connection with the April 19, 2011, evidentiary hearing he and his counsel realized that the "viability of the original theory of the case," particularly with regard to the SOX claims, would be "central to the outcome of the sanctions motion."  (Doc. 286 at 1).  Given the extensive record in this case and Johnson's long-

---

[7]  More properly, the affidavit should be characterized as a declaration.  The statement is not notarized.  Without proper notarization the document does not appear to conform to the definition of an affidavit, which is "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths, such as a notary public."  Black's Law Dictionary 62 (8th ed. 2004).  Kohn does, however, declare under penalties of perjury that his statement is true and correct, which—at least in part—is sufficient to satisfy the requirements of a declaration pursuant to 28 U.S.C. § 1746 (providing alternative to sworn statement but requiring that statement include an averment, signed and dated, that the statement is true under the penalty of perjury).  The declaration, while signed (electronically), is not dated.  Nevertheless, because extrinsic evidence likely could demonstrate the period when the document was signed," Peters v. Lincoln Elec. Co., 285 F.3d 456, 475–76 (6th Cir. 2002) (citation omitted), the court concludes the declaration should not be excluded on the basis it lacks a date.  Finally, as to the fact that the declaration bears only Kohn's electronic signature, the court notes this is permissible under the local rules of this district, provided Johnson possesses the original signed declaration.  *See* N. D. Fla. Loc. R. 5.1(A)(9).  If Johnson does not possess the original signed declaration, however, he is in violation of Local Rule 5.1(A)(9).

In his eighteen-page declaration, Kohn outlines, at length, his credentials in litigating retaliation cases on behalf of employee whistleblowers; discusses the history, purpose and reach of SOX, as well as the implications on SOX of the Dodd-Frank Act of 2010; and addresses the issue of corporate parent/subsidiary liability.  Kohn offers his opinions related to several legal questions Plaintiff seeks to put at issue in this sanctions dispute, among them that it is reasonable for an attorney to argue that Section 806 protects employees of subsidiaries (Doc. 286-1 at 15–16), and to initiate a claim under SOX where the plaintiff did not explicitly allege fraud (*id.* at 16).  Kohn also expresses the opinion that, in the instant case, "the question as to whether [Plaintiff's claims of Medicaid fraud, physical abuse of youth, and forced medication of youth] fall within the scope of protected activity is a question an attorney zealously representing his client should be allowed to litigate without sanction."  (*Id.* at 16–17).  Kohn further states that in his view "there is an insufficient basis to conclude that any of the SOX claims raised" in this case were "frivolous." (*Id.* at 17).

time involvement with it, as well as his statement in the original response to the demand for § 1927 sanctions acknowledging Defendants' characterization of the suit as "frivolous from the outset," the court finds this assertion is not credible (*see* Doc. 160 at 10; *see also* Doc. Doc. 217-11 at 14, Peters' transcribed statement during court-ordered Local Rule 7.1(B) conference attended by Johnson and Mattox that "So, I do think that we have a strong argument that, from the day this complaint was filed, that it was frivolous . . . ."). Johnson had to have been fully aware, well before the hearing in April 2011, that Defendants were taking the position that Plaintiff's claims had been frivolous from the beginning of the case, a position which clearly implicates the "viability of the original theory of the case."

Johnson also advocates the value of an expert's perspective on certain issues in this case, including the corporate parent/subsidiary link and the viability of claims not directly implicating shareholder fraud. Even if there were value in such an opinion, and assuming the court approved the affiant or declarant as an expert, Johnson had ample opportunity to timely and properly submit such an affidavit or declaration, but he failed to do so. Furthermore, had Johnson or Mattox wished to call Kohn or some other expert witness at the evidentiary hearing they could have done so, but they did not.

Johnson also raises equitable and due process concerns as bases for granting his motion. According to Johnson, "in view of the gravity and harshness of the possible sanctions in this case for Plaintiff and her counsel, fairness dictates that those facing potential ruin be permitted to make a record in this case." (Doc. 286 at 2). But, as the record amply reflects, this court has been more than fair in affording the parties extensive opportunities to present their arguments and evidence. Johnson also states that he should be permitted to file Kohn's declaration "due at least in part to the fact that the Defendant[s] submitted additional issues and materials for consideration during the hearing . . . and thus ha[ve] attained a 35- to 25-page advantage over Plaintiff." (*Id.* at 3). This contention warrants little discussion. No unfairness accrues to Johnson simply because Defendants came to the hearing properly prepared to introduce an exhibit for admission into evidence while Johnson—who had the same advance knowledge of the hearing and the same opportunity—did not. In any event, as noted above, the court authorized the filing of certain additional materials. Indeed, although the court does not accept all of them (*see* n.15, *infra*), Plaintiff and Johnson attempted to

avail themselves of that opportunity by submitting four exhibits with their final response (*see* Doc. 285, Exhs. 1–4).

Next, contrary to Johnson's contention, the court's admission of Defendants' Exhibit 1 (a summary exhibit that outlined the conduct which allegedly constituted § 1927 violations) did not violate Johnson's right to due process. Reasonably viewed, the exhibit was not, as he contends, "too extensive to be absorbed at the time of the hearing"; nor did the exhibit amount to a "surprise" or ambush filing that "effectively deprived" counsel of sufficient notice of the specific charges asserted and as "to which Plaintiff had no meaningful opportunity to respond." (Doc. 286 at 3, 4). As the court stated at the hearing when it admitted Exhibit 1 into evidence over Johnson's objection (Doc. 278 at 140–43), the document essentially restates, albeit with some elaboration, the very same conduct and dates provided in Defendants' earlier-filed § 1927 Notice (Doc. 264). Johnson had an adequate opportunity to prepare for the hearing on the basis of the § 1927 Notice, as well as his familiarity with the lengthy proceedings in this case as lead counsel. In any event, the court provided Johnson, after the hearing, with the opportunity to respond once again to Defendants' positions, including the information presented in the supplemental exhibit. In short, Johnson has not been prejudiced in any manner by the admission of Defendants' Exhibit 1. If anything, as matters now stand, if the declaration were admitted Defendants would be prejudiced by having had no opportunity to cross-examine Kohn or otherwise challenge the opinions offered in his declaration.

For all the reasons discussed above, the court concludes Johnson has failed to show good cause for permitting him to file Kohn's declaration, which is both unauthorized and untimely. The court therefore denies Johnson's motion for leave to file the declaration.

As a final matter, the court briefly discusses what amounts to an allegation by Johnson of judicial misconduct by this court.[8] Specifically, Johnson asserts that:

> The affidavit has been available for a week, but has not been submitted until now because of internal consultations within Plaintiff's legal team and consultations with others outside. The difficulties of decision arose from a perception of unfairness and threat during the hearing and a perception by Marie Mattox that her representation of Rick Johnson in this matter was perhaps a cause of adverse treatment of her in another case. The team has therefore been torn between the need to have an

---

[8] Mattox did not sign Johnson's motion for leave to file Kohn's declaration or otherwise supply any information that might support the representations Johnson makes in the motion.

important item in the record on the one hand and the prospect of further adverse action in this case and others as a result of submitting this request.

(Doc. 286 at 3).

Unequivocally, Johnson's unfounded and offensive assertions are false.  A review of the transcript of the hearing held April 19, 2011, reveals no "threat" of any sort (*see* Doc. 278). Likewise, Johnson's suggestion that the undersigned retaliated against Mattox in another case, based on her representation of Johnson in the instant matter, lacks any factual support and is, simply put, false and outrageous.  The court will not at this time further address Johnson's fantastic, wholly unsupported—and unsupportable—accusations, other than to state that  the fact Johnson would feel free to make such wild assertions reflects, at the very least, a shocking lack of professional judgment, self-restraint, and discretion.

### Fees Pursuant to Fla. Stat. § 448.104

Defendants assert that as the prevailing parties[9] in this lawsuit they are entitled under Fla. Stat. § 448.104 to fees incurred in defending Plaintiff's FWA claim because Plaintiff did not act in good faith and her claim had no arguable merit in fact or law (Doc. 156 at 3).  Plaintiff submits that for two reasons the demand for fees pursuant to § 448.104 should be denied:  (1) under Supremacy Clause principles, the SOX fees provision (which authorizes an award of fees only to the prevailing employee) preempts the FWA fees provision (which authorizes an award of fees to the prevailing party), thus precluding an award of attorneys' fees to Defendants[10]; and (2) even absent federal preemption, granting a prevailing defendant attorneys' fees under the FWA is disfavored.

---

[9]  The determination of whether a party has prevailed has been described as "a clear, mechanical one; when a judgment is entered in favor of a party, it is the prevailing party."  Allianz Versicherungs, AG v. Profreight Brokers, Inc., 99 Fed. App'x 10, 13 (5th Cir. 2004) (citations omitted).  With respect to this case, the district court found completely in Defendants' favor on their motion for summary judgment, directing judgment in their favor.  Plaintiff does not dispute that Defendants are the prevailing parties here, nor can she.

[10]  Under the SOX fee provision, "[a]n *employee* prevailing" on her SOX whistleblower claim, "*shall* be entitled to all relief necessary to make the employee whole," 18 U.S.C. § 1514A(c)(1), including "compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees." 18 U.S.C. § 1514A(c)(2)(C) (emphases added).  Thus the statute does not provide for awards to prevailing employers and is mandatory in nature.  The fees provision of the FWA states that "[a] court *may* award reasonable attorney's fees, court costs, and expenses to the prevailing party."  Fla. Stat. § 448.104 (emphasis added).  This statute therefore is not limited to a prevailing employee and is discretionary rather than mandatory in nature.

<u>Federal Preemption</u>

Under Article VI of the U.S. Constitution, federal law is the "supreme Law of the Land," and any state law that is in conflict with a federal law is preempted. *See* <u>Maryland v. Louisiana</u>, 451 U.S. 725, 746, 101 S. Ct. 2114, 2128–29, 68 L. Ed. 2d 576 (1981). The Supreme Court has identified three types of preemption: express, field, and conflict. *See* <u>This That & The Other Gift & Tobacco, Inc. v. Cobb County, Ga.</u>, 285 F.3d 1319, 1322 (11th Cir. 2002). In this case, Plaintiff appears to invoke conflict preemption,[11] which arises either when it is impossible to comply with both federal and state law or when state law "stands as an obstacle" to achieving the objectives of the federal law. <u>Crosby v. Nat'l Foreign Trade Council</u>, 530 U.S. 363, 372–73, 120 S. Ct. 2288, 2294, 147 L. Ed. 2d 352 (2000) (internal quotation marks omitted). Absent the clear intent and purpose of Congress, preemption—in any of its forms—will not be found. *See* <u>CSX Transportation, Inc. v. Easterwood</u>, 507 U.S. 658, 664, 113 S. Ct. 1732, 1737, 123 L. Ed. 2d 387 (1993); *see also* <u>Medtronic, Inc. v. Lohr</u>, 518 U.S. 470, 485, 116 S. Ct. 2240, 2250, 135 L. Ed. 2d 700 (1996) (Congressional intent is the "ultimate touchstone" in a preemption case); and <u>Boyes v. Shell Oil Prods. Co.</u>, 199 F.3d 1260, 1267 (11th Cir. 2000) (Congressional intent governs the court's "determination of whether federal law preempts state law.").

As Plaintiff argues, the SOX and FWA claims in this case are both related to retaliation, and they share the same factual basis. These commonalities alone are not enough, however, for the SOX fees provision to preempt the FWA fees provision. Rather, with the understanding that the intent of Congress is at the center of the question, the court must assess whether it is impossible to comply with both the SOX and FWA fees provisions or whether the FWA fees provision is an obstacle to achieving the objectives of the SOX provision. *See* <u>Crosby</u>, 530 U.S. at 372–73. As principles discussed in two preemption cases from other circuits cited by Plaintiff, <u>Hubbard v. SoBreck, LLC</u>, 554 F.3d 742 (9th Cir. 2009) (*see* Doc. 160 at 5; Doc. 249 at 5; and Doc. 285 at 22), and <u>Brinn v.</u>

---

[11]   Express preemption occurs where Congress has explicitly indicated its intention to preempt state law in the text of the statute. <u>English v. Gen. Elec. Co.</u>, 496 U.S. 72, 78–79, 110 S. Ct. 2270, 2275, 110 L. Ed. 2d 65 (1990). Plaintiff does not contend, nor could she, that SOX *expressly* preempts any aspect of state whistleblower law applicable to this case, including its fee provision. Moreover, Plaintiff does not argue that federal regulation in this legislative field is so pervasive that the court should reasonably infer that Congress left no room for state law to supplement it, thus implicating field preemption. *Id.* at 79.

Tidewater Transp. Dist. Comm'n, 242 F.3d 227 (4th Cir. 2001) (Doc. 249 at 5; and Doc. 285 at 22) are instructive in making this assessment, the court begins its discussion with them.

Plaintiff cites Hubbard v. SoBreck, LLC, 554 F.3d 742, 745 (9th Cir. 2009), for the broad proposition that "the Supremacy Clause of the constitution forbids applying state law to a federal claim with its own fee law." (Doc. 160 at 5). In Hubbard, the Ninth Circuit held that, to the extent state law "authorize[s] the award of fees to a prevailing defendant on nonfrivolous CDPA [California Disabled Persons Act] state claims that parallel nonfrivolous ADA [Americans with Disabilities Act] claims, there is a conflict and the ADA preempts" the CDPA. Hubbard, 554 F.3d at 747. In reaching this conclusion the court explained:

> A violation of the federal ADA constitutes a violation of the CDPA. *See, e.g.*, Cal. Civ. Code §§ 54(c), 54.1(d), 54.2(b). Therefore, to the extent that California's Section 55 mandates the imposition of fees on a losing plaintiff who brought both a nonfrivolous ADA action and a parallel action under Section 55, an award of attorney's fees under Section 55 would be inconsistent with the ADA, which would bar imposition of fees on the plaintiff. In such a case, the proof required to show a violation of the CDPA and of the ADA is identical. In that circumstance, it is impossible to distinguish the fees necessary to defend against the CDPA claim from those expended in defense against the ADA claim, so that a grant of fees on the California cause of action is necessarily a grant of fees as to the ADA claim. As federal law does not allow the grant of fees to defendants for nonfrivolous ADA actions, we must conclude that preemption principles preclude the imposition of fees on a plaintiff for bringing nonfrivolous claims under state law that parallel claims also filed pursuant to the federal law. [citation omitted]

Hubbard, 554 F.3d at 745.

In asserting flatly that a substantive violation of the FWA is also a violation of the SOX (*see* Doc. 160 at 4; and Doc. 249 at 5), Plaintiff apparently attempts to draw the same parallel as did the Hubbard court when it stated that a violation of the ADA constitutes a violation of the CDPA. Plaintiff does not cite a single case in direct support of the parallel she proposes. Plaintiff's assertion in fact is not correct, as the separate discussions of the two claims in the district court's summary judgment order and the Eleventh Circuit's ruling on appeal indicate. The district court conducted analyses under both the FWA and the SOX, noting that the analyses are different (*see* Doc. 150 at 10–15). The Eleventh Circuit likewise conducted separate analyses. Smith, 358 Fed. App'x at 78. To be sure, there is overlap in the two kinds of cases as they share the related legal theory of

retaliation, and there may be instances in which both statutes are violated under the same facts, but a violation of one statute is not necessarily a violation of the other. Additionally, the <u>Hubbard</u> court noted that the proof in the two types of claims in the appeal before it were identical, which is not the case in the instant matter. Indeed, as set forth below, much of the legal framework for SOX and FWA claims is distinct and different.

As an initial matter, there are differences between SOX and FWA claims with respect to the reach and purposes of the respective statutes. In a recent opinion from the Eleventh Circuit, <u>Johnson v. Stein Mart, Inc.</u>, 440 Fed. App'x 795, 800 (11th Cir. 2011) (per curiam), in which attorney Johnson represented the plaintiff, the Eleventh Circuit discussed the whistleblower protections under the SOX that are afforded to employees of publicly traded companies. The court noted that the type of reporting protected by the SOX either specifically or, in many instances, effectively, pertains to fraud. <u>Stein Mart</u>, 440 Fed. App'x at 800, quoting <u>Day v. Staples, Inc.</u>, 555 F.3d 42, 54–55 (1st Cir. 2009). The FWA, on the other hand, is not limited to publicly traded companies; additionally, the type of reporting it covers is less restrictive than the SOX, as it covers other types of conduct. *See* Fla. Stat. § 448.102(2).

Next, and significantly, the initial showing a plaintiff must make under the two statutes is different. Under the whistleblower protection provision of SOX, a publicly traded company is prohibited from discharging an employee for providing information to a supervisory authority about conduct that the employee "reasonably believes" constitutes a violation of federal laws against mail fraud, wire fraud, bank fraud, securities fraud, any SEC rule or regulation, or any provision of federal law relating to fraud against shareholders. 18 U.S.C. § 1514A(a)(1). The Eleventh Circuit has held that this provision requires an employee to demonstrate both an actual belief as well as an objectively reasonable belief that his employer has engaged in enumerated illegal or fraudulent conduct. *See* <u>Gale v. U. S. Dep't of Labor</u>, 384 Fed. App'x 926, 929–30 (11th Cir. 2010) (citations omitted). For an FWA claim, under the current law of this circuit (as both the district and appellate courts in this case have stated), a plaintiff is required to identify an actual violation of a law, rule, or regulation (*see* Doc. 150 at 10; <u>Smith</u>, 358 Fed. App'x at 78).[12] Unless and until a court of competent

---

[12] In the appeal of the instant case, the Eleventh Circuit stated that the district court had "correctly applied the actual violation standard." <u>Smith</u>, 358 Fed. App'x at 78. In <u>Stein Mart</u>, the court noted the parties' disagreement "over whether

jurisdiction decides otherwise, in this circuit the correct standard to apply to a FWA claim is the actual violation standard.  On the other hand, for a SOX claim the threshold showing requires only a good faith belief of a violation.

There are other differences between the legal framework for SOX and FWA claims.  While the elements for these two claims sharing the related legal theory of retaliation appear similar,[13] the burdens are different.  As noted by the Johnson court, "SOX does not follow the familiar Title VII McDonnell Douglas burden-shifting framework" that is applied to FWA claims.  Stein Mart, 440 Fed. App'x at 801.  Instead, in a SOX retaliation case

> [A]n employee bears the initial burden of making a prima facie showing of retaliatory discrimination; the burden then shifts to the employer to rebut the employee's prima facie case by demonstrating by clear and convincing evidence that the employer would have taken the same personnel action in the absence of the protected activity.

Id., citing Welch v. Chao, 536 F.3d 269, 275 (4th Cir. 2008); also citing 18 U.S.C. § 1514A(b) ("An action brought under paragraph (1)(B) shall be governed by the legal burdens of proof set forth in

---

§ 448.102(3) of the FWA employs an actual violation standard or a reasonable belief of violation standard" and stated that "the Supreme Court of Florida has not yet decided this issue of state statutory interpretation." Id. at 7.  The Eleventh Circuit did not further address the disputed question; it instead assumed without deciding that the plaintiff had established "a prima facie case under the FWA consistent with the framework applicable in Title VII retaliation cases." Id. at 8.  The court then concluded that the defendant had satisfactorily articulated a legitimate non-retaliatory reason for the adverse employment action, for which the plaintiff had not demonstrated pretext. Id.

[13]  The elements for a SOX whistleblower claim are:

> (I) the employee engaged in a protected activity or conduct; (ii) the [employer] knew or suspected, actually or constructively, that the employee engaged in the protected activity; (iii) the employee suffered an unfavorable personnel action; and (iv) the circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action.

Johnson, 440 Fed. App'x at 800, citing 29 C.F.R. § 1980.104(b)(1), and Gale, 384 Fed. App'x at 929.

> To make a prima facie case for retaliation under the FWA, in the absence of direct evidence of retaliatory intent the plaintiff may show:

> (1) a statutorily protected expression; (2) an adverse employment action; and
> (3) a causal link between the protected expression and the adverse action.

Slater v. Energy Services Group Intern., 441 Fed. App'x 637, 641 (11th Cir. 2011); see also Sierminski v. Transouth Financial Corp., 216 F.3d 945, 950 (11th Cir. 2000) ("In the absence of any guiding caselaw, the district court correctly applied the analysis in Title VII retaliation cases."), and Stein Mart, 440 Fed. App'x at  804, citing Sierminski and Rice–Lamar v. City of Fort Lauderdale, 853 So. 2d 1125, 1132–33 (4th DCA 2003) (setting out Title VII retaliation framework as applicable to FWA claims).

section 42121(b) of title 49, United States Code."); 49 U.S.C. § 42121(b)(ii) ("[N]o investigation otherwise required under subparagraph (A) shall be conducted if the employer demonstrates, by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of that behavior."); and <u>Livingston v. Wyeth, Inc.</u>, 520 F.3d 344, 352–53 (4th Cir. 2008) (setting out SOX affirmative defense standard).

   In her initial response, Plaintiff states that "[t]he proof required to show a violation of the state and federal acts is identical." (Doc. 160 at 5). Her second response to Defendants' motion leaves out this sentence, although the argument on preemption otherwise is nearly the same (Doc. 249). In her final response, Plaintiff appears to concede that the models of proof necessary to make out a SOX claim and a FWA claim are different, but she contends the preemption analysis is unaffected (Doc. 284 at 22–25).[14] Plaintiff's current position is inconsistent with her reliance on <u>Hubbard</u>, as the case notes the identical nature of the violations and the proof between the federal and state claims at issue. As outlined above, the proof needed to make out SOX and FWA claims is not identical and the violation of one statute is not necessarily a violation of the other. Indeed, as discussed, although both statutes are related to retaliation, aspects of their legal frameworks are different.

   Plaintiff also cites, without meaningful discussion, <u>Brinn v. Tidewater Transp. Dist. Comm'n</u>, 242 F.3d 227, 232–33 (4th Cir. 2001), in support of her contention that under the Supremacy Clause the SOX fee provision "trump[s] a common-fact state claim's fee law even where the state law is expressly contrary." (Doc. 249 at 5; *see also* Doc. 285 at 22). In <u>Brinn</u>, after the parties reached a settlement on the plaintiffs' ADA and Rehabilitation Act claims, the district court awarded attorneys' fees and costs under the statutes' fee provisions. The defendant appealed the award, primarily on the ground that a provision of the Virginians with Disabilities Act ("VDA") prohibited the award of any fees to the plaintiff. <u>Brinn</u>, 242 F.3d at 231–32. The Fourth Circuit affirmed the district court's ruling. The appellate court first held that the VDA only prohibited awards of attorneys' fees in claims arising under the VDA; the law did not apply to claims asserted

---

[14]   According to Plaintiff, there are three reasons why the SOX fees provision preempts the FWA fees provision: controlling case law provides no exception for differences in the models of proof between statutes; any theoretical differences in the models of proof make no practical difference; and in any event, the models of proof are discretionary (Doc. 285 at 22–25).

under federal law and thus did not prohibit the district court's award of fees. Furthermore, the court explained, even if the disputed provision in the VDA did apply to federal claims it would offend the Supremacy Clause to hold that a state law prohibited payment of certain attorneys' fees that a federal law specifically gave courts the discretion to award. *Id.* at 232–33. In other words, the state statute could not be permitted to limit, or stand as an obstacle to, "Congress's intent to give federal courts discretion to award attorney's fees to any entity they deem appropriate . . . ." *Id.* at 233.

In Brinn, the fees provisions of the federal statutes at issue were discretionary, which gave rise to the court's Supremacy Clause concerns and its conclusion that the state statute's mandatory fee provision, if it in fact applied to the facts of the case at bar, would be preempted by federal law. Similarly, in Hubbard the federal fees provision was discretionary. *See* Hubbard, 554 F.3d at 744. In contrast, significantly, in the instant case it is the state law that is discretionary and the federal law that is mandatory (*see* n.10, *supra*). As the discretionary FWA provision may give way to the mandatory SOX provision, the state law presents no obstacle to achieving the federal law's objective, which is to assure a prevailing employee is awarded fees and certain other compensation. Nor is complying with both the mandatory federal and discretionary state law provisions impossible. As in the instant case, a prevailing defendant employer may seek and be eligible to obtain fees under the FWA but not the SOX. Where the plaintiff employee has prevailed on both types of claims, the Supremacy Clause would present no obstacle to her applying for fees under each statute.

In summary, differences exist between the legal frameworks for whistleblower claims under the SOX and such claims under the FWA. These differences render the claims unidentical in nature, which does not support a finding that the state fees provision is preempted by the federal one. *See* Hubbard, 554 F.3d at 745. Regardless, comparison of the mandatory versus discretionary schemes of the fees provisions of the two statutes at issue yields the following crucial, if not dispositive, conclusions for purposes of conflict preemption analysis. *See id.*; Brinn, 242 F.3d at 233. First, it is not impossible to comply with both the SOX fees provision and the FWA fees provision and, second, the FWA provision does not "stand[ ] as an obstacle" to achieving the objectives of the SOX provision. Crosby, 530 U.S. at 372–73. As the fees provision of the FWA does not frustrate the Congressional intent to award fees to prevailing employees in SOX actions, it does not contravene

the Supremacy Clause.  Accordingly, the court concludes that the SOX fees provision does not preempt the FWA fees provision.

An additional case the court and the parties have addressed in connection with Plaintiff's opposition to Defendants' demand for fees pursuant to § 448.104 is Alansari v. Tropic Star Seafood, Inc., 395 Fed. App'x 629 (11th Cir. 2010) (see Doc. 225, deferring action in this case until the appeal in Alansari had been decided; Doc. 253 at 3, n.4, referencing Alansari; Doc. 248, Defendants' supplemental response; and Doc. 249, Plaintiff's supplemental response).  Alansari is another case in which the plaintiff was represented by attorney Johnson.  After the district court granted summary judgment to the defendant on the plaintiff's claims brought pursuant to the FWA, the Florida Civil Rights Act ("FCRA"), the Florida Workers' Compensation Act, and Title VII, the court denied the defendant's motion for attorneys' fees.  Alansari v. Tropic Star Seafood, Inc., 2009 WL 1616496 (N.D. Fla. 2009).  In opposing the motion for fees, Johnson asserted some of the same arguments he raises in the present case, including those on preemption and the applicable fees standard for federal and state claims sharing common facts (see Alansari v. Tropic Star Seafood, Case No. 4:07-cv-00438/SPM/WCS, Doc. 158).  When it denied the defendant's motion for attorneys' fees, the district court did not discuss preemption doctrine under the Supremacy Clause but it did agree with Johnson that:

> [B]ecause the state Whistleblower claim has the same nucleus of operative facts as the Title VII claims, a grant of fees for the state claim, pursuant to Section 768.79 [regarding offers of judgment] is the same as a grant of fees under Title VII, which is prohibited.  Therefore, Defendant is similarly prohibited from an award of fees on the state claim.

Alansari, 2009 WL 1616496, at *2.  The court also noted that:

> [B]ecause the violations for which [Plaintiff] sought Whistleblower protection were violations of Title VII and Florida Civil Rights Act, the standard for an award of attorney's fees under the Whistleblower claim should similarly apply.  An award of attorney's fees to a prevailing defendant, in a state Whistleblower claim that involves a potential employer violation of Title VII or the Florida Civil Rights Act is prohibited unless Plaintiff's Whistleblower claim is deemed to be frivolous, unreasonable, or groundless [and here, Alansari's FWA claim was not frivolous, so Defendant is not entitled to fees].

Id.

On appeal, also making no mention of preemption doctrine, the Eleventh Circuit affirmed the district court's ruling, in part stating that "Title VI and whistleblower retaliation claims employ the same analysis, just as Title VII and FCRA claims do." Alansari v. Tropic Star Seafood, Inc., 395 Fed. App'x 629, 632 (11th Cir. 2010), citing Sierminski, 216 F.3d at 950, and Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1389 (11th Cir. 1998). The court observed that "Florida courts have recognized the similarity and overlap between claims under the FCRA and the Florida Whistleblower Act." Id. (citations omitted). It then went on to hold that because "Plaintiff's civil rights claims were based on the same set of facts" and "these facts—whether brought pursuant to state or federal civil rights statutes—are governed by the same legal standards[,]" there was no error in declining to award fees under Florida's offer of judgment statute "because Florida law prevents awards of attorneys' fees . . . in state and federal civil rights cases absent a showing of frivolity[.]" Id.

Discussing the Alansari case and her contention that a federal attorneys' fees standard should govern both the federal claim and a state claim with common facts, Plaintiff submits that

In Jones [v. United Space Alliance, LLC, 494 F.3d 1306 (11th Cir. 2007)], the Title VII and FCRA claims were both about discrimination and the claims shared common facts, so the federal fee standard governed both. In Alansari, the Title VII and the whistleblower claims were both about retaliation and shared common facts, so the federal fee standard governed both. In this case, the Sarbanes-Oxley (SOX) and the whistleblower claims are both about retaliation and share common facts, so the federal fee standard should govern both. How could it be otherwise?

The court concludes it is "otherwise" here because, as discussed above, Plaintiff's SOX and FWA claims, while sharing a common nucleus of operative fact and also sharing retaliation as a related legal theory, are governed by legal standards that differ. Putting aside for the instant analysis the question of frivolity, the court notes the fact that Plaintiff's SOX and FWA claims in this case are both "about retaliation" is not what the Eleventh Circuit found or required in Alansari. As quoted above, the appellate court noted that the claims at issue not only were based on the same set of facts but also that "these facts—whether brought pursuant to state or federal civil rights statutes—are governed by the *same legal standards* . . . ." Alansari, 395 Fed. App'x at 632 (emphasis added). Accordingly, this court does not agree with Plaintiff's argument that simply because her SOX and FWA claims are both "about retaliation" and are based on common facts, an award of attorneys' fees to Defendants under § 448.104 is precluded.

Propriety of Granting Fees Award to Prevailing Defendant under Fla. Stat. § 448.104

The Supreme Court has made clear that in most circumstances a losing plaintiff "should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422, 98 S. Ct. 694, 54 L. Ed. 2d 648 (1978). In this case, Plaintiff apparently concedes that the courts which have addressed the issue have found the Christiansburg standard to be inapplicable to claims for fees under § 448.104, which means that a prevailing defendant need not show that the plaintiff's claim was frivolous in order to recover attorneys' fees. New World Communications of Tampa, Inc. v. Akre, 866 So.2d 1231, 1235–36 (Fla. 2d DCA 2003); see also Gamb v. Hilton Hotels Corp., 1997 WL 893874, at *2 (M.D. Fla. 1997) (finding award of attorneys' fees under § 448.104 does not require a showing of frivolity), aff'd, 132 F.3d 46 (11th Cir. 1997); Stone v. Geico Gen. Ins. Co., 2006 WL 3333674, at *3 (M.D. Fla. 2006) ("The Christiansburg standard is not applicable to fee awards under § 448.104."). Accordingly, as Defendants are the prevailing parties in this case, they are entitled to receive attorneys' fees without being required to show that Plaintiff's FWA claim was frivolous.

As noted, courts have discretion in deciding whether or not to award attorneys' fees under § 448.104. Akre, 866 So. 2d at 1235. With respect to a discretionary award of attorneys' fees, the Eleventh Circuit has instructed that "the fact that a losing party has acted in good faith or that his legal position had arguable merit will justify an exercise of the district court's discretion in deciding not to award attorney's fees." Sherry Mfg. Co. v. Towel King of Fla., 822 F.2d 1031, 1034 (11th Cir. 1987) (addressing award of fees to a prevailing defendant in a copyright case); see James v. Wash Depot Holdings, Inc., 489 F. Supp. 2d 1336, 1339 (S.D. Fla. 2007) (citing Sherry in addressing FWA fees demand). Nevertheless, even if it is found that a plaintiff proceeded in good faith on a non-frivolous claim, fees need not be denied as "it is not a precondition to an award to show that the losing party acted in bad faith or brought a frivolous claim." Id. at 1035.

As noted in Bush v. Raytheon Co., 2009 WL 5128040, at *2 (M.D. Fla. 2009), § 448.104 does not set out any particular elements for courts to consider in deciding whether an award of fees is appropriate. In Blanco v. Transatlantic Bank, 2009 WL 2762361, at *2 (S.D. Fla. 2009), the district court articulated five factors, derived from the FWA and other Florida fee statutes, which are non-exhaustive and non-controlling but nonetheless may guide the court's discretion in assessing

a claim for fees under this statute. These include: (1) whether the party's case was meritorious or frivolous; (2) the scope and history of the litigation, including whether the party continued to prosecute the action despite the presence of an efficient resolution; (3) the parties' wealth disparity; (4) whether an award of fees would frustrate the FWA's remedial purpose by deterring worthy claimants; and (5) whether the party acted in good or bad faith. *Id. See also* Raytheon, 2009 WL 5128040, at *2 (reciting factors laid out in Blanco). This court considers the five factors below.

 1. Meritorious or Frivolous Nature of Plaintiff's FWA Claim

 This factor has been the focus of much contention and debate between the parties. While the parties, Plaintiff in particular, apparently would have it otherwise, the current fees and sanctions dispute is not an opportunity to relitigate the merits of this case. In order to describe the factual backdrop and the context of the instant matter, this court has consulted the relevant summary judgment record. Also, in making its recommendation the court has considered the papers and evidence the parties were either entitled to file or present or which the court invited them to submit. The court only references and relies on those materials, however, to the extent they are relevant to the limited purpose of resolving the instant dispute without revisiting issues of law or fact that the district court and the Eleventh Circuit have already settled.[15]

---

[15]  As discussed, at the evidentiary hearing, the court stated that it would permit the parties to submit additional exhibits that had been discussed but were not admitted, for example, due to privacy concerns requiring the redaction of the names of minors. The court did not state, nor could it rule at that time, that any of the items in fact would be considered. Indeed, the court questioned the relevance to the fees proceeding of Plaintiff's proposed exhibits relating to alleged incidents of abuse (Doc. 278 at 104, 108).

 Of the fifteen exhibits filed by Defendants with their final brief, all comply with the court's instructions regarding documents that might be submitted after the hearing. To the extent they are relevant and helpful to its review, the court has considered them. Plaintiff filed four exhibits with her final response, including the affidavits of Terry R. Williams ("Williams"), a former GCYA employee, and DeQuan Paul ("Paul"), a former GCYA resident and now an adult (Doc. 285-2, Doc. 285-4). These affidavits address matters concerning abuse and/or fraud that could or should have been raised in the litigation phase of this case. They contain new evidence. As noted above, it is not this court's role in recommending a resolution of this fees and sanctions dispute to assess the merit—or lack thereof—of new evidence. The court does, however, acknowledge the subject matter of the affidavits (more properly, Williams' "affidavit" is a declaration) and the fact of their existence. Accordingly, the court considers the affidavits only to that extent. Plaintiff's two other exhibits, to the extent they are relevant and helpful to the court's review, have been reviewed.

 The court notes one other, related matter. Plaintiff asserts in her third response that the district court "overlooked" her summary judgment evidence of an "actual violation" of law in which "she describes personally witnessing a physical assault and battery on a youth by a manager." (Doc. 285 at 15, referring to Doc. 86-2 at 148). If Plaintiff thought the district court had "overlooked" critical evidence she should have timely brought it to the district court's attention. She filed nothing with the district court on this issue immediately after summary judgment was entered, however, and there is no mention of it in the Eleventh Circuit's opinion. The district court's finding therefore is not a proper subject of discussion at this juncture.

With that preamble, the court considers whether Plaintiff's FWA claim is frivolous. A claim may be found to be frivolous where, on summary judgment, defendants prevail and the plaintiff has failed to introduce any evidence in support of her claims. *See* Head v. Medford, 62 F.3d 351, 355 (11th Cir. 1995) (noting that findings of frivolity have generally been sustained when plaintiffs failed to introduce evidence supporting their claims), citing Sullivan v. Sch. Bd. of Pinellas County, 773 F.2d 1182, 1189 (11th Cir. 1985). A case is not frivolous where the plaintiff provides sufficient evidence to support her claims. Sullivan, 773 F.2d at 1189. Additionally, in Sullivan the Eleventh Circuit instructed that courts should consider several other factors in examining a claim for frivolity: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." *Id.* The Eleventh Circuit explained that these guidelines are not hard and fast rules, however, and that frivolity determinations should be made on a case-by-case basis. *Id.*

The district court determined at summary judgment that Plaintiff had failed to establish a prima facie case on her FWA claim. The court concluded that Plaintiff had presented "no evidence" that Defendants were responsible for violating a law, rule, or regulation within the meaning of the FWA, and there was "no admissible evidence" that the complained-of abuse incidents had actually occurred (Doc. 150 at 12). Accordingly, Plaintiff's FWA claim may be considered frivolous, as her case was dismissed prior to trial and, having failed to introduce evidence which supported the claim, she failed to establish a prima facie case under the FWA. The Eleventh Circuit affirmed the district court's summary judgement ruling.[16] Smith, 358 Fed. App'x at 78. The court therefore concludes that this factor favors Defendants.

2.      Scope and History of the Litigation

The history of this litigation reflects that Plaintiff's counsel at times was uncooperative and intransigent in dealing with defense counsel. For example, after removal Horwitz ("probably" at Johnson's direction (*see* Doc. 278 at 75)) refused to recognize certain discovery responses provided during the state court proceedings (Docs. 283-7–9). Johnson testified that this essentially was due to his preference of having all discovery conducted in this forum under "the Magistrate Judge Miles

---

[16]   The court recognizes that the Eleventh Circuit noted that even if Plaintiff could establish a prima facie case of retaliation the FWA claim failed because she had not presented significantly probative evidence of pretext. The court does not, however, read this comment as undermining the district court's conclusions, which form this court's basis for concluding the claim is frivolous.

Davis" discovery order, which Johnson perceived as being stricter and more favorable to Plaintiff (Doc. 278 at 55–56, 77).  The parties' activities during the state court proceedings is beyond the scope of this inquiry, but Plaintiff's requiring duplicative efforts and production of documents by Defendants once the case was removed to federal court was unnecessary and wasteful (*see* Docs. 283-7–9).  Also, as discussed above, the record reflects that Plaintiff's counsel heedlessly and unsuccessfully pursued numerous discovery-related motions, one of which resulted in the imposition of sanctions against Johnson.  Moreover, Plaintiff and her counsel should have recognized—surely no later than by the close of discovery—that the evidence on which she intended to rely was insufficient to support her FWA claim.  By that point, Plaintiff and her counsel had the benefit of the information not only brought out in her own deposition but also in the depositions of eight former and current GCTC employees, as well as the GCTC corporate representative, and almost fifteen hundred pages of documents produced by Defendants.  Nonetheless, Plaintiff forged ahead, continuing to pursue her claim through summary judgment (and beyond).

Accordingly, the court concludes that certain conduct by Plaintiff's counsel was wasteful of the time and resources of the district court, this court, and Defendants, and it unnecessarily lengthened the litigation.  This factor thus weighs in favor of Defendants.

3.      The Parties' Wealth Disparity

Although there is little in the record regarding the parties' respective financial circumstances, the court may readily deduce that there is a large disparity in wealth between the corporate Defendants and Plaintiff, an individual now earning approximately $50,000 per year (*see* Doc. 278 at 127); *see* Bell, 2005 WL 1618223, at *1.  While the court should consider the disparity in wealth between parties to avoid impoverishing an individual or unfairly punishing her for exercising the right to seek legal redress, neither should it penalize a corporation simply because it has greater resources.  Raytheon, 2009 WL 5128040, at *2.  The disparity in wealth should not result in refusing to allow any attorneys' fees whatsoever to Defendants.  Should fees be awarded, the court may consider the disparity in wealth when setting the amount to be awarded.

4.      Effect on Remedial Purposes of the FWA

The FWA "establishes Florida's public policy in favor of promoting the disclosure of wrongdoing and the protection of those who make such disclosure. . . ."  Bell, 2005 WL 1618223, at *1.  Requiring an unsuccessful plaintiff to pay substantial attorneys' fees "could have an

unwarranted 'chilling' [e]ffect upon other worthy individual claimants," and frustrate the remedial purposes of the FWA.  *Id.*  Defendants have not yet identified the total amount of attorneys' fees they seek in this case.  Given the length and course of the litigation and Peters' statement that his clients have spent an "absolute fortune" defending this case (Doc. 278 at 6), however, the court anticipates that the amount could be many hundreds of thousands of dollars.  The court does not discount the possible chilling effect such a large fees award could have, but it concludes that under the circumstances presented in this case it would not adversely impact the remedial purposes of the FWA.

Through Plaintiff's continued pursuit of this claim after she should have recognized that she lacked adequate legal and factual support it can be said that Plaintiff in fact undermined the remedial purpose of the statute by "clogging the courts, wasting private resources and diminishing the importance of protecting legitimate whistleblowers." Raytheon, 2009 WL 5128040, at *3.  Rather than having a chilling effect, granting Defendants' fee motion would not deter worthy claimants but instead would actually "promote the remedial purpose of the Whistleblower Act by discouraging meritless claims." *Id.*  Moreover, as Defendants point out, "if the Florida Legislature believed that an award of fees to a prevailing defendant under the FWA would automatically have a 'chilling effect' on the underlying public policy and remedial nature of the statute, it would not have included the prevailing 'party' language in the statute.  But, of course, it did." (Doc. 284 at 8).

For all of these reasons, the court concludes that this factor should weigh in Defendants' favor.

5.      Whether Plaintiff Acted in Bad Faith

As support for their argument that Plaintiff acted in bad faith, Defendants point to counsel's "discovery motion shenanigans and reliance upon the Golf Channel case (and others) for a proposition that was unsupported in the law." (Doc. 284 at 12).  Additionally, Defendants contend it is undisputed that Plaintiff removed and then disclosed confidential patient information from GCTC, which they maintain is "plain evidence of bad faith." (*Id.* at 11–12).  Plaintiff also, according to Defendants, improperly alleged in her complaint that two GCTC employees had been dishonorably discharged from the military (*id.* at 13).

As noted previously, some of counsel's conduct during discovery was unnecessarily contentious and in noncompliance with certain of the court's local rules.  Indeed, in once instance

(but not in another) this court found Johnson's conduct sanctionable.  While the issue of bad faith is discussed further, below, in connection with the claim for § 1927 sanctions, for the purpose of the instant analysis the court notes the following.  Even though Plaintiff's counsel's litigation tactics were at times needlessly combative and antagonistic, as well as personally offensive, after consideration of the record, the court cannot conclude that any particular conduct was so egregious that it rose to the level of bad faith.  The court is not aware of, for example, indisputable evidence in this case showing that Plaintiff's counsel lied to opposing counsel or to the court; withheld, spoiled, or otherwise misused evidence[17]; or delayed the proceedings for some clearly unethical or unlawful purpose.  Counsel did improperly cite The Golf Channel in his summary judgment papers for the proposition that an employee must only show only a good faith belief that a FWA violation occurred, a reliance the district court criticized as "seriously misplaced."  (Doc. 150 at 10, n.5).  In that particular instance Johnson misstated, or possibly even misrepresented, the law.  In this court's view, however, even though such conduct is deplorable and reflects poorly on Johnson's professionalism, it is not demonstrable evidence of bad faith.

The second example cited above—Plaintiff's removal of confidential information from GCTC premises—does not pertain to Plaintiff's litigation conduct, which is the subject of this inquiry.  Defendants do not assert that the conduct was committed with the intention of pursuing litigation, nor is the court aware of evidence suggesting that.  Even if Plaintiff's conduct was unlawful or unethical, the court cannot say it is proof of bad faith in connection with the actual litigation of this action.   While the third example—regarding false allegations in the complaint—does involve litigation conduct, the timely and appropriate vehicle for asserting such a complaint would have been pursuant to Fed. R. Civ. P. 11, but Defendants did not file such a motion.  In any event, the court concludes that the conduct alleged does not constitute obviously sanctionable

---

[17]  *Compare* Johnson v. Stein Mart, Inc., 2009 WL 1424214 (M.D. Fla. 2009).  This unpublished order was issued by the magistrate judge in the Stein Mart case discussed above and involved the misuse of discovery materials by Johnson.  As here, in the Stein Mart case Johnson accused the magistrate judge of being unfair.  More particularly, Johnson filed a motion to recuse the magistrate judge on the ground of bias after the court reprimanded Johnson—by written order rather than by some other type of sanction—for "refusing to return [ ] inadvertently disclosed emails [during discovery] and choosing instead to repeat select portions of those emails in Plaintiff's filings with the Court on the public record . . . ." *Id.*, at *3 (footnote omitted).  The order reprimanding Johnson, among other things, described counsel's conduct concerning the emails as "reprehensible," *id.*, n.10, a characterization which in part prompted Johnson's motion.  The magistrate judge denied the motion to recuse, and Johnson filed Rule 72 objections to the order, which objections the district court overruled in a lengthy order.  *See* Johnson v. Stein Mart, Inc., Case No. 3:06-cv-341-J-34TEM, Document #104.

conduct or conduct that should be considered bad faith for purposes of this particular, limited analysis.

In short, even though Plaintiff may have been overzealous and unwisely tenacious in initiating and persisting with her pursuit of this litigation—conduct that likely was encouraged by her attorneys' similar inclinations and imprudent advice—the court does not find that she or her counsel acted in bad faith. This factor therefore favors Plaintiff.

In summary, on balance, the five Raytheon factors favor Defendants. Given the above discussion, as well as its own familiarity with aspects of the history of this case, the court concludes that the district court may properly exercise its discretion and award Defendants reasonable attorneys' fees under § 448.104 as the prevailing parties on Plaintiff's FWA claim. It so recommends. Should the district court adopt this recommendation, the parties should be directed to strictly comply with N.D. Fla. Loc. R. 54.1(E) to determine the amount of fees and nontaxable costs to be awarded. See N.D. Fla. Loc. R. 54.1(D) (providing for bifurcated procedure for determining attorneys' fees; initial motion and response should address liability only and, if liability is found, the amount to be awarded shall be determined in subsequent proceedings).[18]

_____

[18] The court addresses an additional issue in connection with its recommendation that § 448.104 fees be awarded to Defendants. In reasoning that the ADA fees provision preempted the CDPA provision, the Hubbard court noted the "impossibility" of distinguishing the fees necessary to defend against the state claim from those necessary to defend against the federal claim. Hubbard, 554 F.3d at 745. While, for the reasons stated above, this court concludes that the SOX fees provision does not preempt the FWA fees provision, it nevertheless notes there may be a similar difficulty in this case in distinguishing between fees expended on defense of the FWA claim (as to which fees are available) and those expended defending the SOX claim (as to which fees are not).

The SOX and FWA claims in this case not only are factually intertwined but they also share the related legal theory of retaliation. As explained by the court in Current Builders of Florida, Inc. v. First Sealord Sur., Inc., 984 So. 2d 526 (Fla. 4th DCA 2008):

> In the event a party is entitled to an award of fees for only some of the claims involved in the litigation, i.e., because a statute or contract authorizes fees for a particular claim but not others, the trial court must evaluate the relationship between the claims and "where the claims involve a common core of facts and are based on related legal theories, a full fee may be awarded unless it can be shown that the attorneys spent a separate and distinct amount of time on counts as to which no attorneys' fees were sought [or were authorized]."

Id. at 533–34, quoting Chodorow v. Moore, 947 So. 2d 577, 579 (Fla. 4th DCA 2007). See also Anglia Jacs & Co., Inc. v. Dubin, 830 So. 2d 169, 172 (Fla. 4th DCA 2002); Hensley, 461 U.S. at 435 ("the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."); and Prato v. Hacienda Del Mar, LLC, 2011 WL 3875373 (M.D. Fla. 2011). Here, as noted, Plaintiff's claims under the SOX and the FWA share a common core of facts and are based on the related legal theory of retaliation, although the legal standards used to decide the claims differ. Unless Defendants spent time on defense of the SOX claim that they did not spend on defense of the FWA claim, they should be entitled to a full fee under the FWA fees provision, even

**Sanctions Against Plaintiff's Counsel Pursuant to 28 U.S.C. § 1927**

Title 28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Because the provisions of § 1927 are "penal in nature [they] must be strictly construed." Norelus v. Denny's, Inc., 628 F.3d 1270, 1281 (11th Cir. 2010) (citations and internal quotation marks omitted). Under the plain language of the statute three factors must be present in order to justify an imposition of sanctions: (1) an attorney must engage in "unreasonable and vexatious" conduct; (2) such "unreasonable and vexatious" conduct must "multipl[y] the proceedings"; and (3) the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct. Id. An attorney multiplies the proceedings unreasonably and vexatiously only when his conduct is "so egregious that it is 'tantamount to bad faith.'" Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1239 (11th Cir. 2007) (citation omitted). Bad faith is an objective standard which turns "not on the attorney's subjective intent, but on the attorney's objective conduct." Id. The conduct at issue should be compared with how a reasonable attorney would have acted under the circumstances. More particularly, "[t]he term 'unreasonably' necessarily connotes that the district court must compare the attorney's conduct against the conduct of a 'reasonable' attorney and make a judgment about whether the conduct was acceptable according to some objective standard. The term 'vexatiously' similarly requires an evaluation of the attorney's objective conduct." Id. at 1239–40; see also Amlong, 500 F.3d at 1240 (citing Black's Law Dictionary, (8th ed. 2004), for definition of "vexatious" (meaning "without reasonable or probable cause or excuse; harassing; annoying")). Neither negligent conduct, standing alone, nor lack of merit will support a finding of bad faith. Id. at 1241–42. Rather, the "attorney must knowingly or recklessly pursue a frivolous claim . . . ." Id. at 1242. Recklessness is "a gross deviation from conduct that might be reasonable in the circumstances." Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1227 (11th Cir. 2003). "[O]bjectively reckless conduct is enough to warrant sanctions even if the attorney does not act knowingly and malevolently." Amlong, 500 F.3d at 1241. Nevertheless, the attorney's purpose or intent regarding the multiplication of the proceedings is not irrelevant. Id. "Although the attorney's objective

---

though the SOX provision does not authorize an award of attorneys' fees to a prevailing defendant.

conduct is the focus of the analysis, the attorney's subjective state of mind is frequently an important piece of the calculus, because a given act is more likely to fall outside the bounds of acceptable conduct and therefore be 'unreasonabl[e] and vexatious[ ]' if it is done with a malicious purpose or intent." *Id.* The decision to impose sanctions pursuant to § 1927 is within the sound discretion of the court. <u>Peterson v. BMI Refractories</u>, 124 F.3d 1386, 1390 (11th Cir.1997).

Defendants contend that counsel's decision to initiate the case was vexatious and unreasonable given the documentation available with the rejection of Plaintiff's OSHA administrative claim (*see* Doc. 284 at 22). Defendants further assert that it was vexatious and unreasonable to continue to pursue the case when it became clear there was no evidentiary support for Plaintiff's claims, which occurred at the latest when Defendants' employees and others had been deposed (*id.*). According to Defendants, because counsel's vexatious and unreasonable conduct multiplied the proceedings, they are entitled to sanctions in the form of attorneys' fees pursuant to § 1927. Johnson asserts that the proper means by which to attack an attorney's actions in filing pleadings or in conducting discovery is not through § 1927 but rather through motions filed pursuant to Fed. R. Civ. P. 11 or Rule 37, neither of which approach is presently available in this case (Doc. 285 at 8–10). Additionally, Johnson maintains that his legal positions for the SOX and FWA claims were not frivolous or sanctionable (*id.* at 14–15), he defends the "quantity and quality" of Plaintiff's evidence (*id.* at 16), and he contends that Defendants' allegations do not adequately charge § 1927 violations (*id.* at 18).

Like the FWA claim, Plaintiff's SOX claim also is frivolous: it was dismissed prior to trial, and as Plaintiff failed to introduce evidence that showed she had engaged in protected activity, she failed to establish a prima facie case of retaliation under the SOX.[19] *See* <u>Head</u>, 62 F.3d at 355, and

---

[19] Plaintiff apparently would argue that, under <u>Sylvester v. Parexel International LLC</u>, ARB Case No. 07-123 (ARB May 25, 2011) (en banc), the supplemental authority she supplied (Doc. 288), her SOX claim should not be considered frivolous. But <u>Sylvester</u> was decided at the motion to dismiss phase and thus involved the sufficiency of allegations, while this case decided at summary judgment involved the sufficiency of the evidence; here, Plaintiff failed to come forward with evidence that she engaged in protected activity. The other case on which Plaintiff relies, <u>Johnson v. Siemens Bldg. Techs., Inc.</u>, ARB Case No. 08-032, 2011 WL 1247202 (DOL Adm. Rev. Bd Mar. 31, 2011) (en banc), also is not helpful to her here. In <u>Siemens</u>, the Board held that "[a]n employee of a subsidiary whose financial information is included in a publicly traded parent company's consolidated financial statements is protected against retaliation where the employee engages in whistleblower protected activity under Section 806." <u>Siemens</u>, 2011 WL 1247202, at *12. But, as noted, the Eleventh Circuit held that Plaintiff in the instant case failed to present evidence demonstrating that she had engaged in protected activity. The failure to establish a prima facie case of retaliation, taken with the other considerations noted above, is enough to conclude the SOX claim is frivolous.

Sullivan, 773 F.2d at 1189.  The court proceeds to consider whether Plaintiff's counsel engaged in conduct that was tantamount to having acted in bad faith, thus warranting the imposition of sanctions for unreasonably and vexatiously multiplying the proceedings pursuant to § 1927.  The following discussion is structured loosely on some of the dates identified in Defendants' § 1927 Notice (Doc. 264) and is divided into two main sections, the first addressing events that did not occur in proceedings before this district court and the second addressing events that did.

Events That Did Not Occur in Proceedings Before This District Court

With respect to conduct occurring in connection with the OSHA complaint, Plaintiff's counsel cannot be sanctioned under § 1927 because, based on its plain language, § 1927 applies only to filings after the lawsuit has begun.  *See* Macort v. Prem, Inc., 208 Fed. App'x 781, 786 (11th Cir. 2006).  Nor can counsel be sanctioned for conduct committed in the state court proceedings, including the filing of the initial complaint and any subsequent events in that forum.  *See* GriD Systems Corp. v. John Fluke Mfg. Co., 41 F.3d 1318, 1319 (9th Cir. 1994) (stating that § 1927 "cannot reach conduct of a party who is not involved in an action before the sanctioning court at the time of the conduct."); *see also* Butcher v. Lawyers Title Ins. Corp., 2005 WL 2242881 (W.D. Mich. 2005) (concluding plaintiff's "conduct in filing the state court complaint is not sanctionable under § 1927 because it did not multiply any proceedings in this case" but that his conduct after the case was removed was "fair game" for § 1927 sanctions), citing GriD Systems Corp., 41 F.3d at 1319; Bowden v. Tompkins Rubber Co., 1992 WL 108973, at *1 (E.D. Pa. 1992) (§ 1927 applies "only to cases in federal court, and not to proceedings occurring in state court before removal to federal court").  Accordingly, none of the conduct by Plaintiff's counsel prior to the removal of this action, including conduct related to the OSHA complaint dismissed on January 8, 2007, and the litigation that proceeded in state court, is subject to sanctions in this federal court under § 1927.  Additionally, with respect to the appeals of this action to the Eleventh Circuit (affirming district court's March 31, 2009, order on December 21, 2009) and the Supreme Court (denying certiorari on May 21, 2010), absent authorization from the higher court the district court may not sanction Plaintiff's counsel pursuant to § 1927 for conduct occurring before, or in connection with, proceedings on appeal.  *See* Hudson v. International Computer Negotiations, Inc., 499 F.3d 1252, 1266 (11th Cir. 2007).

Events That Occurred in Proceedings Before This District Court

After removal, Plaintiff filed an amended complaint (Doc. 25) and attempted to file two second amended complaints (Docs. 104, 120). Johnson maintains that § 1927 may not be applied to any pleadings because the sanctioning of pleadings is solely the province of Rule 11 (Doc. 285 at 6, citing Macort, 208 Fed. App'x at 786 ). As this court reads Macort, however, although it states that § 1927 applies only to filings after the lawsuit has begun, it says nothing about the applicability of § 1927 to subsequently filed pleadings, including amended complaints. *See* Macort, 208 Fed. App'x at 786. Indeed, courts have imposed sanctions under § 1927 in connection with the filing of amended complaints. *See*, *e.g.*, Johnson v. University of Rochester Medical Center, 642 F.3d 121 (2nd Cir. 2011) (affirming district court's imposition of § 1927 sanctions in connection with attorney's having knowingly included a false accusation in proposed amended complaint); United Capitol Ins. Co. v. Pontotoc Elec. Power Ass'n, 2000 WL 1598068 (5th Cir. 2000) (affirming district court's imposition of sanctions under § 1927 and Rule 11 for filing second amended complaint known to lack evidentiary support for faulty product claim and refusing to dismiss such claim); Wages v. I.R.S., 915 F.2d 1230 (9th Cir. 1990) (affirming imposition of sanctions under § 1927 for attempting to file amended complaint that did not materially differ from one previously rejected for failure to state a claim and persisting in seeking change to court's original judgment).

In any event, this court concludes that the filing of the first amended complaint in this case (Doc. 25), does not warrant the imposition of §1927 sanctions. This complaint reflected changes to the initial complaint that were permitted by the state court prior to removal and as to which Defendants brought no immediate subsequent challenge in federal court after removal, such as in the form of a Rule 11 or Rule 12 motion. The district court struck the second amended complaint filed October 7, 2008 (Doc. 104) (and disregarded the other second amended complaint filed November 6, 2008 (Doc. 120)) (Doc. 150 at 5), and instead elected to proceed on the first amended complaint. The district court was critical of the proposed second amended complaint but it did not characterize its filing as bad faith. Although the district court's silence in this regard is not determinative, this court perceives no basis for concluding or recommending that the conduct described by the district court was so egregious as to be considered bad faith for the purpose of the instant analysis.

Johnson submits there is "good authority that the reach of § 1927 does not trespass into the turf of discovery sanctions." (Doc. 285 at 7, citing Corwin v. Walt Disney World Company, 2008

WL 754697, *16 n.10 (M.D. Fla. 2008) (stating that "[s]anctions or other remedies for discovery abuse are ordinarily to be sought under Rules 26 and 37 . . . rather than 28 U.S.C. § 1927.")). Johnson improperly attempts to give far more meaning to a very general and correct statement of law than the district court which noted it ever intended. This statement—coming from an unpublished case (which dropped the statement in a brief footnote with no citation and which went on to consider whether sanctions pursuant to § 1927 for discovery abuses were appropriate)—hardly is "good authority" for the broad principle Johnson proposes. In fact, the Eleventh Circuit has indicated that § 1927 sanctions are appropriate against counsel in the context of bad faith discovery abuses. *See* Malautea v. Suzuki Motor Co. Inc., 987 F.2d 1536, 1541, 1544 (11th Cir.1993) (§ 1927 sanctions were justified where counsel participated in a discovery cover-up, created unnecessary delay, and increased both the cost of litigation and the burden on the court); *see also* Norelus, 628 F.3d at 1270 (affirming imposition of § 1927 sanctions against attorneys who created 63-page errata sheet with 868 attempted changes to their client's deposition testimony, materially altering testimony and undermining support for claims, but nevertheless continued to litigate).[20] Thus, contrary to Johnson's assertion, sanctions are available under § 1927 with respect to discovery matters involving an attorney's bad faith.

The court has already commented on Plaintiff's counsel's (Horwitz, likely at Johnson's direction) unnecessarily requiring duplicative discovery after the case was removed (*see* Docs. 283-7–9). This may demonstrate a lack of common sense and professional good will, but not bad faith. With regard to Plaintiff's discovery motions, even if the court concluded that Johnson's motion to compel depositions (Doc. 51) was brought in bad faith, inasmuch as he has already been sanctioned under Rule 37 (Doc. 81, September 12, 2008, sanctions order and Doc. 118, November 5, 2008, order affirming sanctions order), the purpose of imposing sanctions has already been served and additional monetary sanctions under § 1927 for fees would be duplicative. Also, although this court

---

[20] Johnson acknowledges Norelus, but he apparently seeks to distinguish it by characterizing the case as involving extraordinary discovery abuse that impacted the "essence" of the case, which § 1927 may reach, as opposed to the more common type of discovery disputes, which § 1927 may not. *See* Doc. 285 at 7 ("A deposition and changes to it are part of discovery, but not in the sense of the overreaching demands and stonewall responses we normally associate with Rule 37 and Rule 26(g) discovery disputes. As the [Norelus] court explained, the conduct at issue was something beyond discovery and beyond the pleadings that went to the very essence of the case[.]"). It is not, however, the nature of the discovery dispute—whether it goes to the "very essence of the case" or pertains to a less central matter— that determines whether sanctions under § 1927 are warranted but rather the nature of the conduct at issue. With any award of sanctions under § 1927, "[b]ad faith is the touchstone." Schwartz, 341 F.3d at 1225.

denied the motion to compel discovery filed by Horwitz (Doc. 45) (and, earlier, her motion for a case management conference (*see* Doc. 46, denied at Doc. 56), it declined to impose sanctions with respect to the former motion as it noted circumstances existed that would make an award unjust (Doc. 58). No bad faith is found in connection with either of these motions.[21]

Defendants point to Plaintiff's June 10, 2008, deposition as a seminal point in the litigation, a turning point at which her counsel should have realized her claims had no factual support and discontinued their pursuit of them. The court has reviewed the cited excerpts of Plaintiff's deposition, but it does not read them as definitively as Defendants do. Although the testimony, taken together, points to a lack of support for Plaintiff's claims, much of it is phrased in less than certain terms. For example, Defendants state Plaintiff's testimony effectively demonstrates she admitted that "none of her complaints related to any law, rule or regulation enacted pursuant to federal, state or local law." (Doc. 276-1 at 2). The court did not, however, locate any instance where Plaintiff was directly asked nor responded unequivocally in the negative to this precise proposition. The court therefore does not conclude that at the time of Plaintiff's deposition testimony her counsel was obliged to acknowledge Plaintiff's claims were completely untenable and there was a "duty to discontinue their quest." Norelus, 628 F.3d at 1287, citing Avirgan v. Hull, 932 F.2d 1572, 1582 (11th Cir. 1991). Accordingly, the court finds no bad faith in counsel's continued pursuit of the claims after June 10, 2008.

---

[21] This is not at all to say that counsel acted in good faith in connection with the motion to compel discovery (Doc. 45). One of the disputed matters which this court addressed in its order denying Plaintiff's motion involved certain personnel files (*see* Doc. 58). In the order, the court noted that despite their objections that the requested documents were not relevant or not reasonably calculated to lead to the discovery of admissible evidence, Defendants had offered to produce parts of the records or, alternatively, the entire record subject to a protective order. Plaintiff's counsel, however, refused to agree to either option. The court characterized Plaintiff's refusal to agree to the latter option as "baffling" since had she done so her discovery request would have been fully complied with, subject only to a protective order (*id.* at 3). The court added that such refusal was "clear evidence of Plaintiff's failure to confer in good faith with Defendants in an attempt to resolve this issue." (*Id.*).

During the evidentiary hearing Johnson attempted to rebut Defendants' representation that he had refused to agree to any protective order, stating that he had only refused to agree to a "complete" protective order but had agreed to an order protecting only confidential matters (Doc. 278 at 61). He then complained that because the court had denied the motion to compel the production of the personnel files "we were handicapped in litigating the rest of the case." (*Id.*). In concluding that counsel did not act in good faith with respect to this matter, the court is completely unpersuaded by Johnson's hearing testimony. Johnson could have made this assertion prior to (or after) the court's ruling on the motion to compel but did not. That he did not, given the great importance he attaches to the personnel files, undermines the credibility of his testimony and forthrightness with the court. In the court's view, the refusal to agree to the protective order offered by Defendants during discovery remains an example of the less than good faith exhibited by Plaintiff's counsel during this litigation.

By the close of discovery on August 1, 2008, however, a reasonable attorney should have been aware of the insufficient evidence in support of Plaintiff's claims. This deficiency was noted by the district court in connection with the FWA claim and by the Eleventh Circuit in connection with the SOX claim. That Plaintiff's counsel nevertheless continued to pursue the litigation through summary judgment therefore was not reasonable and multiplied the proceedings. The court therefore must consider whether this conduct was so egregious as to be vexatious and thus amounting to bad faith.

The court first notes that, although Plaintiff's claims failed, several of the legal positions taken by Johnson which are now under debate were not clearly vexatious. For example, although this court finds that Plaintiff's reliance on it is inapplicable and unhelpful to her here, the recent Siemens ruling may support Johnson's apparent, though not explicit, contention that because corporations and their subsidiaries are treated as a single unit under SOX it was not necessary to name the subsidiaries of PSI in the OSHA complaint in order to exhaust Smith's administrative remedies or to show that Plaintiff was PSI's employee. Siemens, 2011 WL 1247202, at *12. Although the Eleventh Circuit has not addressed the question since Siemens was issued or endorsed its holding, the case does suggest that Johnson's legal position was based on a viable theory and not taken in bad faith. Also, although Johnson's argument that only a good faith belief of a violation of law is required to make out an FWA claim is incorrect, the Eleventh Circuit observed in Johnson that the standard involves a disputed issue of state statutory interpretation that the Supreme Court of Florida has not yet decided. Johnson, 440 Fed. App'x at 804. Also, as noted, in the appeal of this case the court appeared to acknowledge the dispute when it stated that "even if the good faith standard was the correct one" Plaintiff's FWA claim would fail. Smith, 358 Fed. App'x at 78. Given that the FWA standard involves a disputed interpretation of Florida law, even though Johnson's argument and the manner in which he presented it were wrong, the court cannot say they were so wrong as to be tantamount to bad faith.

The question remains whether, based on the lack of evidentiary support which doomed the SOX and FWA claims, Plaintiff's counsel's continued pursuit of the claims beyond the close of discovery and through summary judgment was so egregious as to be vexatious and thus in bad faith. Though a close question, the court concludes it was not.

Johnson stated at the evidentiary hearing that, in retrospect, he did not "get enough witness affidavits to attach to the summary judgment response" (Doc. 278 at 78).   According to Johnson, information from Williams and Paul, which Johnson apparently submits was available at summary judgment but which was not presented, would have supported Plaintiff's allegations of abuse and fraud (*see* Doc. 285 at 16).  Even if Johnson had timely offered the affidavits of Williams and Paul, however, the ultimate outcome of the case would not have been any different.  The Eleventh Circuit found insufficient evidence of pretext on the FWA claim and no evidence of Plaintiff's protected conduct on the SOX claim, neither of which issues were within the scope of Williams' and Paul's knowledge and the proper subject matter of their testimony.  Johnson, through Mattox, also indicated at the evidentiary hearing that he did not submit additional affidavits from witnesses favorable to Plaintiff, other than her own and one other[22] (Doc. 278 at 132), because he thought Plaintiff's written abuse reports would be sufficient to withstand summary judgment (*id.* at 135).  Obviously, Johnson misjudged the evidentiary value of Plaintiff's detailed abuse reports—of which there were many—as well as the strength of the other, extensive evidence submitted in response to the motion for summary judgment.[23]  But lack of merit and judgment are not the tests for imposing sanctions pursuant to § 1927: bad faith is.  *See* <u>Schwartz</u>, 341 F.3d at 1225.  Despite the lack of adequate evidence to support Plaintiff's claims, this court does not perceive that counsel's conduct in pursuing the claims through summary judgment was so egregious, rose so high, as to be bad faith.  In this court's view, even though, in objective terms, counsel's conduct deviated from that which was "reasonable," it was not a "gross" deviation amounting to recklessness.  *Id.* at 1227.  Nor does the evidence support that counsel knowingly pursued frivolous claims.  <u>Amlong</u>, 500 F.3d at 1242.  Rather, the court perceives counsel's conduct as deriving from extremely poor litigation judgment applied to a weak case, compounded by overzealous advocacy.  Accordingly, the undersigned concludes the conduct of Plaintiff's counsel at the summary judgment stage of the proceedings was

---

[22]   This in fact was a deposition, taken from Plaintiff's co-worker Tami Harriel (Doc. 86-27).

[23]   This evidence, totaling over 900 pages, included the transcripts of depositions from Plaintiff, corporate representative Jeffrey Mark Kaplan, and numerous GCYA employees or former employees; Plaintiff's declaration; Plaintiff's abuse reports; and various GCYA employment and policy documents (Doc. 86).

not so egregious as to be vexatious within the meaning of § 1927's high standard.[24]  *See* Amlong, 500 F.3d at 1242 (stating that an attorney's conduct "must be particularly egregious to warrant the imposition of sanctions," a standard the court described as "high").[25]  It was not tantamount to bad faith.  Moreover, while the focus of the inquiry under § 1927 is on counsel's objective conduct, the record does not reflect clear evidence that Plaintiff's counsel acted with subjective malicious purpose or intent to multiply the proceedings.  This is not to say that Johnson at times may not have been unaccommodating and intemperate; indeed, he may have failed to display the level of courtesy customarily exhibited by attorneys admitted to practice in this district.  While such conduct understandably may have been vexing to those exposed to it, vexing conduct should not be confused or equated with vexatious conduct within the meaning of § 1927.  That Plaintiff's counsel did not subjectively act with malicious intent lends support to the conclusion that the pursuit of the claims through summary judgment did not rise to the level of bad faith.  Amlong, 500 F.3d at 1241.

For the foregoing reasons, this court concludes that the behavior of Plaintiff's counsel during the long course of this litigation in the district court was not essentially equivalent to having acted in bad faith, thus warranting the imposition of sanctions for unreasonably and vexatiously multiplying the proceedings.  The court therefore recommends that the district court exercise its discretion to deny Defendants' motion for sanctions pursuant to § 1927.

**Sanctions Against Defendants Pursuant to Rule 11**

Remaining is Plaintiff's motion for Rule 11 sanctions against Defendants (Doc. 294).

---

[24]  The court notes Defendants' citation to Murray v. Playmaker Services, LLC, 325 Fed. App'x 873 (11th Cir. 2009), in support of its argument that sanctions are appropriate for at least the period after the close of discovery when opposing counsel should have been aware that the claims lacked merit.  In Murray, the court found no abuse of discretion in the district court's finding that plaintiff's counsel was liable for attorneys' fees under § 1927.  The lower court had concluded that the application of the economic realities test clearly demonstrated that the plaintiff was an independent contractor not covered by Fla. Stat. § 448.08.  Instead of advising her client to voluntarily dismiss the case at the conclusion of discovery, when these facts became apparent, counsel filed an affidavit directly contradicting plaintiff's own deposition testimony in an apparent attempt to salvage the litigation.  Murray v. Playmaker Services, LLC, 548 F. Supp. 2d 1378, 1383 (S.D. Fla. 2008).  Like Murray, Plaintiff's counsel in this case proceeded with the case beyond discovery when they should not have.  Plaintiff's counsel in this case did not, however, engage in the same sort of egregious conduct that counsel did in Murray.  There, the attorney tried to remake her client's testimony so that her claim would not be rejected for facial noncompliance with the statute at issue—and did so after the district court had already warned her that the claim appeared to be frivolous.

[25]  Congress, in amending § 1927, intended to establish a stringent standard for judicial review of attorney misconduct under the statute.  In 1980, the House Report stated that:  "The high standard which must be met to trigger section 1927 insures that the provision will in no way dampen the legitimate zeal of an attorney in representing his client."  H. Rep. No. 1234, 96th Cong., 2d Sess. 8, reprinted in 1980 Code Cong. & Ad. News 2716, 2782.

Rule 11(b), Representations to the Court, provides:

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or lack of information.

Fed. R. Civ. P. 11(b)(1)–(4).

Without citing the specific provision[s] of Rule 11 on which she relies, Plaintiff states that she moves for Rule 11 sanctions "based upon the misrepresentation of law and fact in Defendants' post-hearing memorandum on their motion for fees under 28 U.S.C. § 1927" (Doc. 294 at 1). In her motion Plaintiff points to four violations, which the court discusses below. Prior to Plaintiff's filing of her Rule 11 motion, Defendants filed a notice denying any wrongful conduct but nevertheless making "appropriate corrections" to each purported violation in their third memorandum (Doc. 293). After the Rule 11 motion was filed, Defendants filed a response asserting that the motion should be denied for the reasons given in the earlier-filed corrective notice as well as because Plaintiff lost the right to file the motion when Defendants submitted their corrective notice (Doc. 296 at 2). Should they prevail in opposing the motion, Defendants seek their costs and fees under Rule 11(c)(2) (*id.* at 3).

Rule 11 is based on the principle that attorneys and pro se litigants have an obligation to the court not to engage in conduct that frustrates the aims of Rule 1, which provides that the federal rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. To achieve this goal, Rule 11 requires litigants to make a

reasonable inquiry into the law and facts before making legal and factual contentions in a pleading, motion, or other paper presented to the court.  Rule 11 also emphasizes the duty of candor to the court by subjecting litigants to sanctions if they insist on maintaining a position after it is no longer tenable.  Litigants who withdraw or correct contentions after a potential violation is called to their attention are afforded protection against sanctions.  *See* Advisory Committee Notes to Rule 11, 1993 Amendments.  Rule 11's safe harbor provision requires a party to formally serve the allegedly offending party with a copy of the proposed motion for sanctions at least twenty-one (21) days prior to filing the sanctions motion with the court.  Fed. R. Civ. P. 11(c)(2).  If the party takes appropriate corrective action, "the question of sanctions becomes moot."  5A Wright & Miller, <u>Federal Practice and Procedure</u>, § 1337.2 (2010).  After the expiration of twenty-one (21) days, if corrective action has not been taken, the party seeking sanctions may proceed to file the motion with the court.  *See* Fed. R. Civ. P. 11(c)(2).  The standard applied to Rule 11 assessments is a "reasonableness under the circumstances" standard.  <u>Anderson v. Smithfield Foods, Inc.</u>, 353 F.3d 912, 915 (11th Cir. 2003).  A district court may award Rule 11 sanctions when (1) a party files a pleading, motion, or other paper with no reasonable factual basis; (2) a party files a pleading, motion, or other paper based on a legal theory with no reasonable chance of success and which cannot be advanced as a reasonable argument to change existing law; and (3) a party files a pleading, motion, or other paper in bad faith or for an improper purpose.  *Id.*

Before addressing the substance of Plaintiff's motion, the court notes Defendants' assertion that the motion was not properly served (Doc. 296 at 2, n.1).  According to Defendants, Plaintiff emailed the motion prior to its filing but such method is not "Rule 5 service because the parties did not consent in writing to service by 'electronic means.'"  (*Id.*, citing Fed. R. Civ. P. 5(b)(2)(E)).  Defendants further state that although the certificate of service on the motion states that it was "sent by U.S. Mail and facsimile to CM/ECF [Case Management/Electronic Case Filing] to Mark Peters," Peters has no record of receiving it by any means other than by email prior to its filing with the court.

Rule 5(b)(2)(E) in part provides that a paper is properly served by "sending it by electronic means if the person [to be served] consented in writing . . . ."  Fed. R. Civ. P. 5(b)(2)(E).  Defense counsel was admitted pro hac vice to this district and, as such, agreed to receive service by email of CM/ECF filings.  *See* N.D. Fla. Loc. R. 11.1(C)(2); N.D. Fla. Loc. R. 5.1(5).  More particularly, by registering for electronic case filing Peters consented to receive notice electronically and waived the

right to receive notice by personal service or first class mail (other than with respect to the service of the complaint and summons). *See* http://www.flnd.uscourts.gov/attorneys/cmecf/cmecfReg.cfm, ECF Attorney Registration Form, Item #4 . Such registration did not, however, include consent to electronic service of documents that are not filed with the court, although consent to electronic service of such papers could have been given separately, in writing, in accordance with Rule 5(b)(2)(3). *Id.* Plaintiff's threatened Rule 11 motion obviously was not filed with the court, and, according to Peters, Defendants did not consent separately in writing to electronic service. The reference on the certificate of service to the motion's having been "sent by U.S. Mail and facsimile to CM/ECF to Mark Peters" mirrors the boilerplate language on the certificate of the motion later filed with the court (Doc. 294 at 9). Both statements appear intended to convey that service was accomplished upon Peters through the court's electronic filing system, CM/ECF, though this is not entirely clear. In any event, Peters states he has no record of having received the threatened motion by regular mail. If Plaintiff in fact failed to properly serve the threatened Rule 11 motion on Defendants, which appears to be the case, this reason alone would suffice as a basis for denying the motion. Regardless, the motion is due to be denied on its merits.

Plaintiff first contends that Defendants wrongly argued to the court that the holding in Johnson v. Siemens Bldg. Techs., Inc., ARB Case No. 08-032, 2011 WL 1247202 (DOL Adm. Rev. Bd Mar. 31, 2011) (en banc), is irrelevant to this case. According to Plaintiff, it is a misrepresentation by Defendants to state that Siemens does not apply here because it was based on the Dodd-Frank Act of 2010, which was enacted well after this case commenced, and because it does not have retroactive effect. Plaintiff contends this argument is wrong, that the case merely clarifies that it has always been the law under SOX that employees of subsidiaries are protected against retaliation. It is important here, Plaintiff asserts, because "Defendants' claim that a reasonable lawyer and even a reasonable plaintiff should have known in 2006 that employees of non-publicly-traded corporations were not covered by SOX, is the very centerpiece of Defendants' quest for sanctions in this case." (Doc. 294 at 2).

First, although a reviewing federal court must accord due deference to the Secretary of Labor's interpretation of the statutes he administers, *see* Gale, 384 Fed. App'x at 928, it is worth noting that to date the sole federal court to even mention Siemens did so only in passing and did not substantively address the corporate parent/subsidiary issue under discussion here. *See* Lawson v.

FMR LLC, ___ F.3d ____, 2012 WL 335647, at * 27, n.7, n.25 (1st Cir. 2012). Thus no federal court has yet passed on, much less approved, the Secretary's interpretation in Siemens that publicly traded parent corporations/subsidiaries should be treated as one entity under the SOX. Moreover, as this court has noted, although the Eleventh Circuit agreed with the district court's holding regarding Plaintiff's failure to exhaust her administrative remedies with respect to PBS and GCTC and to show she was an employee of PSI—issues that might implicate Siemens—it further found there was no evidence that Plaintiff had engaged in SOX-protected activity. The Siemens case has no applicability to the Eleventh Circuit's latter finding or to this court's conclusion that the SOX claim is frivolous. Regardless, despite the finding of frivolity, as outlined above, this court has concluded that sanctions against Plaintiff's counsel pursuant to § 1927 are not warranted. The court concludes that this ground has no merit and, in any event, Defendants' corrective notice was sufficient.[26] Plaintiff therefore should not have included this ground in her Rule 11 motion.

Next, Plaintiff complains that Defendants cited Jankey v. Song Koo Lee, 105 Cal. Rptr. 3d 290 (Cal. Ct. App. 2010), review granted and opinion superseded by Jankey v. Song Koo Lee, 231 P.3d 907, 110 Cal. Rptr. 3d 1 (Cal. 2010), without including the subsequent history and thus failing to disclose to the court that the case no longer is good law. Jankey is critical of one case on which Plaintiff relies, Hubbard v. SoBreck, LLC, 554 F.3d 742, 745 (9th Cir. 2009). Defendants' reference to Jankey consisted of a single sentence: "The sole preemption case upon which Plaintiff relies, Hubbard v. Sobreck, 554 F.3d 742 (9th Cir. 2009), is factually distinguishable and has been rejected squarely by the most recent case to consider it, Jankey v. Song Koo Lee, 105 Cal. Rptr. 3d 290, 291–92 (Cal. Ct. App. 2010)." (Doc. 284 at 15). Defendants should have cited the subsequent history of Jankey, and the court in no way condones their failure to do so. That said, in light of their very brief mention of the case (which includes no real discussion or reliance on the case), there is

---

[26]   Among other matters, Defendants correctly suggest that the objected-to mention of Siemens in their third memorandum was so minor as to be inconsequential; the ARB's holding in Siemens is not binding on this court nor is its analysis dispositive of the pending motion; and the Eleventh Circuit has spoken in this case on the SOX parent/subsidiary relationship, which in any case was not central to its affirmance of the district court's order (Doc. 293 at 4–5).

absolutely no hint here that Defendants failed to include the subsequent history for any improper purpose or in bad faith.  Rule 11 sanctions on the basis of this conduct are not warranted.[27]

Plaintiff also seeks Rule 11 sanctions on the ground Defendants misrepresented her Rule 26 disclosures.  According to Plaintiff, Defendants represented to the court, at the hearing and in their third memorandum (Doc. 278 at 137–39; Doc. 284 at 11), that Plaintiff's Rule 26 disclosures did not include Williams when in fact Plaintiff's supplemental disclosures did list Williams as a witness (Doc. 285-2).  Plaintiff submits that after she drew the error to Defendants' attention, they should have immediately alerted the court to their misrepresentation.  In their corrective notice Defendants state that with their third memorandum they submitted a copy of and discussed Plaintiff's initial Rule 26 disclosures and her responses to interrogatories regarding Williams (Docs. 283-11, 283-13 and 284 at 11).  Additionally, with the third memorandum they filed a copy of Plaintiff's supplemental Rule 26 disclosures, which listed Williams (Doc. 283-12).  According to Defendants, "[n]otwithstanding Plaintiff's accusations to the contrary, the record is (and was) complete on this point.  This Court certainly can review Plaintiff's various discovery responses (and the timing of them) [footnote omitted] and draw its own conclusions regarding who knew what and when they knew it." (Doc. 293 at 3).

Plaintiff's initial Rule 26 disclosures do not identify Williams as a potential witness. Plaintiff's supplemental Rule 26 disclosures do list Williams, though the disclosures were not submitted to Defendants until September 30, 2008 (*see* Docs. 285-3), which was almost two months after discovery closed on August 1, 2008, more than one month after Defendants filed their summary judgment motion on August 21, 2008, and just a few days after Plaintiff filed her response to the

---

[27]   The court cannot help but compare Defendants' brief reference to <u>Siemens</u> and incomplete citation of <u>Jankey</u> with Johnson's more studied references to <u>The Golf Channel</u> in his response to the motion for summary judgment and <u>Corwin</u> in his response to the fees and sanctions motion.  Although the district court criticized Johnson for his reliance on <u>The Golf Channel</u>, stating that it was "seriously misplaced," and this court has criticized him for his reliance on <u>Corwin</u> for overstating a generalized comment in the case, neither court has suggested that sanctions were warranted for such conduct.  It seems that, in this respect, Johnson would hold Defendants to a higher standard than that to which he himself has been subjected.

   The court also cannot help but contrast some of the litigation choices Defendants' counsel made in this case with those of Plaintiff's counsel.  For example, when Peters realized his mistake in seeking § 1927 sanctions against Plaintiff and attorneys' fees pursuant to Fla. Stat. § 57.105, he—as any reasonable attorney would—withdrew the demands (*see* n.1, *supra*).  On the other hand, Plaintiff—in what seems to this court to have been an unreasonable (though not clearly vexatious) offensive strategy—sought to file an untimely and unwarranted § 1927 motion against Defendants and then, when that was unsuccessful, this meritless Rule 11 motion.

motion on September 25, 2008.  In their third memorandum Defendants included a footnote which stated "Plaintiff identified Ms. Williams in her responses to interrogatories but not her Rule 26 disclosures." (Doc. 284 at 11, n.7).  No mention is made of the late-filed supplemental disclosures, although a copy of them indeed is included with the memorandum (Doc. 283-12).   Although this dispute is one of no real consequence, in their third memorandum and corrective notice Defendants could have been more forthcoming about this relatively simply matter.  Failing to mention the supplemental Rule 26 disclosures in the third memorandum yet including a copy of them as an exhibit to the memorandum is curious, to say the least, and—other than pointing to Plaintiff's untimeliness in submitting the supplemental disclosures—the corrective notice does nothing to attempt to explain this action.  Regardless, there is no reason to believe that Defendants acted for any improper purpose or in bad faith with respect to this matter.  Rule 11 sanctions are not appropriate.

Plaintiff's fourth and final ground for imposing Rule 11 sanctions is that Defendants made several frivolous arguments concerning the SOX fees provision, including that the  SOX is silent on fees, this alleged silence cannot be read to bar fees to a prevailing defendant, and certain fees provisions in the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR Act") are part of the SOX or apply to it (Doc. 294 at 5).   The court was not misled, confused, or misinformed by any of the arguments made by Defendants of which Plaintiff complains nor does it find them "simply inexcusably overzealous" or "deceptive" in nature, as Plaintiff argues they are (*id.* at 8).   In short, this argument lacks merit.   In any event, Defendants' corrective notice was sufficient.[28]  Plaintiff therefore should not have included this ground in her Rule 11 motion.

For all of the foregoing reasons, this court recommends that Plaintiff's motion for Rule 11 sanctions be denied.  One final matter remains.  Defendants seek an award of attorneys' fees for time spent opposing Plaintiff's Rule 11 motion.  Rule 11 allows the court, in its discretion, to award to

---

[28]   Defendants respond in their corrective notice that they cited the AIR Act

because the plain language of SOX makes clear that its enforcement 'shall be governed under the rules and procedures set forth in [the AIR Act,] section 42121(b) of title 49, United States Code.'  *See* 18 U.S.C. § 1514A(b)(2)(A).  The Court obviously is aware of this enforcement structure because one of its prior Orders specifically directed the parties to address how the procedural and other differences between the AIR Act and Title VII would impact the Supremacy Clause analysis.  *See* Docket Entry No. 253 at 3, n.4.

(Doc. 293 at 4).

the prevailing party the reasonable attorneys' fees and expenses incurred in presenting or opposing the Rule 11 motion. Fed. R. Civ. P. 11(c)(2). None of the four grounds raised by Plaintiff in her Rule 11 motion present significant concerns in the context of this particular case, and none comes close to warranting the imposition of Rule 11 sanctions. Even the two items (an incomplete case citation and the failure to discuss Plaintiff's Rule 26 supplemental disclosures) which Defendants did not address as fully as they might have in responding to the Rule 11 motion involve only relatively minor matters. Defendants submit that Plaintiff employed the motion as an improper "combative tool" or covert attempt to file an unauthorized reply brief (Doc. 296 at 3). The court agrees. On this basis, the court therefore recommends that the district court exercise its discretion under Rule 11(c)(2) and award attorneys' fees to Defendants for expenses incurred in defending against Plaintiff's meritless Rule 11 motion.

SUMMARY

As discussed above, the court denies Plaintiff's motion to file the affidavit of Michael D. Kohn (Doc. 286). Further, it recommends that Defendants' motion for attorneys' fees and sanctions (Doc. 156) be granted to the extent they seek attorneys' fees against Plaintiff pursuant to Fla. Stat. § 448.104 on Plaintiff's FWA claim and denied to the extent they seek sanctions against Plaintiff's counsel pursuant to 28 U.S.C. § 1927. The court also recommends that Plaintiff's motion for Rule 11 sanctions (Doc. 294) be denied, with Defendants to be awarded their attorneys' fees.

Accordingly, it is **ORDERED**:

Plaintiff's motion to file the affidavit of Michael D. Kohn (Doc. 286) is **DENIED**.

And it is respectfully **RECOMMENDED** that:

1.       Attorneys Reino, Channapasappa, and Avery be permitted to formally withdraw as counsel for their respective clients.

2.       Defendants' motion for attorneys' fees and sanctions (Doc. 156), be **GRANTED in part and DENIED in part**, as follows:

The motion should be **GRANTED** with respect to the request for fees pursuant to Fla. Stat. § 448.104 and **DENIED** with respect to the request for sanctions pursuant to 28 U.S.C. § 1927.

3.       Plaintiff's motion for Rule 11 sanctions (Doc. 294) be **DENIED**, with Defendants to be awarded attorneys' fees for their expenses incurred in opposing the motion.

4.      If the district court adopts the undersigned's recommendation that Plaintiff be found liable for attorneys' fees pursuant to Fla. Stat. § 448.104, the parties shall immediately commence complying with N.D. Fla. Loc. R. 54.1(E) to determine the amount of fees to be awarded.

At Pensacola, Florida this  28th  day of February 2012.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**




## NOTICE TO THE PARTIES

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**